Patricia F. **CHILDRESS**

v.

**CONTINENTAL CASUALTY COMPANY et al.**

**Civ. A. No. 76–2977.**

United States District Court, E. D. Louisiana.

Feb. 22, 1978.

Judgment affirmed, 5 Cir., 587 F.2d 809.

Dan C. Garner, Kenneth M. Henke, Dan C. Garner & Associates, New Orleans, La., for plaintiff.

Francis G. Weller, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants.

## MEMORANDUM OPINION AND ORDER

EDWARD J. BOYLE, Sr., District Judge:

Plaintiff is the named beneficiary on a life insurance policy purchased by her husband, Robert Childress, and issued by defendant, Continental Casualty Company. On April 25, 1976, Childress was killed while engaged in sport parachuting when his parachute failed to open. Defendant has refused to pay the policy proceeds because it contends that the parachuting accident comes within an exclusion from coverage contained in the policy. Plaintiff brings this suit to enforce payment of the stipulated death benefit of $12,500, and for penalties and attorney fees for failure to pay, which plaintiff alleges are authorized by LSA–R.S. 22:658.[1] The diversity jurisdiction of this court being properly invoked, the case has been submitted for adjudication on the record, the evidence adduced at trial (the policy and the testimony of a single witness), and memoranda of counsel.

The relevant exclusionary clause relied on by defendant reads as follows:

> The policy does not cover any loss caused by or resulting from . . . injury sustained in consequence of riding, except as a passenger, and not as a pilot or crew member, in any vehicle or device for aerial navigation.

*See* Exhibit A, attached to plaintiff's complaint. It is not contended that Childress was a pilot or crew member of the plane that carried him to the desired altitude for the jump which ended in his death. The only issues are whether the parachute which he was wearing and was to use on that jump was a "device for aerial navigation" and if so, whether decedent could be said to have been "riding in" such a device as its pilot at the time of his death. If the answers to both of these questions are affirmative, the exclusion is effective and there can be no recovery by plaintiff on the policy.

The only witness at trial was J. Michael Brown, the jumpmaster and most experienced jumper and skydiver on board the airplane which lifted Childress, along with some ten or eleven other jumpers, for what proved to be Childress' fatal jump. He testified that the type of parachute being used by decedent was designed so that its wearer could control his descent with a great deal of precision. He described the maneuvers it could be used to effect, and stated that it could be landed "on a dime" if its wearer decided to make a jump for accuracy. On this particular jump, however, Mr. Childress did not intend to use the parachute for intricate maneuvers or for an accurate landing, but rather the whole jump group had determined to form a "star" or a link-up wherein the free-falling skydivers were to have held hands in a circle for a time during descent prior to releasing their parachutes. The parachutes

---

1. Although plaintiff has sought relief under section 658, the appropriate statute is LSA–R.S. 22:656, which pertains to payment of life insurance claims. Section 658 specifically excludes application of the requirements and penalties contained therein to life insurance policies.

were to be opened at a fixed altitude and only for the purpose of slowing the jumpers' descent for a safe landing. Childress' parachute failed to open properly, however, and he fell to his death.

Defendant argues that decedent's parachute was not merely a device to safely slow his descent, but that it was also a "device for aerial navigation" because it could, by means of controls, be turned, braked, stalled and directed by its user, and its rate of descent could be regulated. Defendant reasons that since Childress was riding in this "device" when he met his death, his wife cannot recover under the policy because of the aforementioned exclusion. To support this argument, defendant cites *Fielder v. Farmers New World Life Insurance Co.*, 435 F.Supp. 912 (C.D.Cal. 1977), and the case of *Willingham v. Life and Casualty Insurance Co. of Tennessee*, 216 F.2d 226 (5 Cir. 1954).[2]

In *Fielder* the court held that an insurer was not liable for payment of benefits under a life insurance policy when the insured died in an accident while hang gliding. The case is factually inapposite here. At his request Fielder's policy was endorsed to exclude death resulting from descent from any kind of aircraft *or from travel or flight in any kind of aircraft in which the insured was acting as a pilot or member of the crew*. (Emphasis ours). The court found that Fielder was the pilot of a hang glider which crashed causing injuries which resulted in death and, therefore, his operation of the glider constituted travel or flight in an aircraft in which he was acting as pilot within the provisions of the exclusion. The court apparently found it unnecessary to consider the "descent from any kind of aircraft" exclusion under the facts presented.

The insured in *Willingham* died when he fell or was thrown from an airplane. The policy in question had two relevant exclusion clauses, one regarding ordinary life insurance and the other pertaining to an accidental death benefit. The former excluded coverage for death resulting from "operating, or riding in, any kind of aircraft," and the latter excluded coverage for "death resulting from operating, riding in, or descending from any kind of aircraft." Plaintiff argued that coverage should not have been excluded under the first clause because it did not mention "descending from" as did the second, and the deletion of this phrase indicated that it was not intended to exclude death caused by a fall, as the second clearly did. The court held that "riding in" included "falling out of," and therefore the exclusion in either clause was effective to bar recovery. It was further reasoned that the phrase "descending from" referred to a more gradual and voluntary movement than a fall:

> [I]t includes, we think, such things as making a *voluntary descent by parachute* not because the plane is about to crash, or as descending from the plane after it has landed, things separated in causal connection from the "riding in."

*Willingham, supra*, at 228 (emphasis added). Application of this reasoning in the instant case leads us to the conclusion that Mr. Childress' death is not excluded from coverage under the policy written by defendant. The court in *Willingham* ruled that "descending from" was added to refer to death by, among other things, use of a parachute, and that those things included within the meaning of "descending from" are separated in causal connection from "riding in." The logical conclusion to be drawn is that "riding in" was not intended to include the use of a parachute. Similarly, we hold that Childress was not "riding in" a device for aerial navigation; if anything, he was "descending from" one, and the policy which covered his death did not exclude coverage for death caused by descending from an aircraft.

<hr/>

**2.** Defendant has also attached to its trial memorandum a copy of the opinion in *Stajnrajh v. Continental Casualty Co.*, an unreported 1965 opinion from the Court of Common Pleas of Westmoreland County, Pennsylvania. The case concerns an identical accident and the application of an identical exclusion clause. The court in *Stajnrajh* ruled in favor of the defendant-insurer. We choose not to follow *Stajnrajh*.

We are further supported in our holding for plaintiff by *Clark v. Lone Star Life Insurance Co.*, 347 S.W.2d 290 (Tex.Civ.App. 1961). There, an insured died while sport parachuting. His insurance policy excluded coverage on death resulting "from travel or flight in or on any species of aircraft." The court, in holding that a parachute is not an "aircraft," relied on the definition of a parachute, which indicated that the common understanding is that a parachute is a device designed to safely retard descent from an aircraft, but that parachutes themselves cannot be considered aircraft. *Id.* at 293.

■ An exclusionary clause in an insurance policy must be construed strictly, *Snell v. Stein*, 261 La. 358, 259 So.2d 876, 879 (1972), and any ambiguities must be construed in favor of the insured and against the insurer. *Albritton v. Fireman's Fund Ins. Co.*, 224 La. 522, 70 So.2d 111, 113 (1953). Since the policy which defendant composed does not define the term "device for aerial navigation," we have looked to the common definition of parachute in determining whether a parachute can reasonably be said to be a "device for aerial navigation." Webster's Third New International Dictionary (1967) defines parachute as "a folding umbrella-shaped device usu[ally] made of light fabric for retarding the speed of a body attached to it by offering resistance to the air. . . ." *See also Clark v. Lone Star Life Insurance Company, supra*, 347 S.W.2d at 293. Considering this definition, we hold that a parachute is not a device for aerial navigation. Accordingly, we hold that plaintiff's decedent was not riding in a device for aerial navigation when he met his death.

■ Plaintiff contends that defendant's failure to pay her claim for the death benefits was without just cause and she is entitled to recover penalties provided by Louisiana law for such failure.[3] We find that defendant had reasonable ground to believe that it had a defense to plaintiff's claim

under the policy, and therefore that its refusal to pay was with just cause. *Rayford v. New York Life Insurance Co.*, 359 F.Supp. 139 (E.D.La.1973). Plaintiff is not entitled to section 656 interest.

There shall be judgment entered herein for plaintiff in the sum of $12,500, plus legal interest from date of judicial demand until paid and for costs.

---

3. *See* note 1, *supra*. LSA–R.S. 22:656 is applicable to life insurance policies. It is noted that the only penalty provided in section 656 is interest at 6% per annum from the date of

receipt of proof of death, when the insurer fails to settle the claim for the policy proceeds without just cause within 60 days of the receipt of proof of death.