**Patricia A. WILSON, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA et al., Defendants.**

**No. C–76–1009–SW (SJ).**

United States District Court,
N. D. California.

June 6, 1978.

---

Nevo F. Capitina, Melville A. Toff, Mountain View, Cal., for plaintiff.

O'Connor, Cohn, Dillon & Barr, San Francisco, Cal., for defendant Life Ins. Co. of North America.

## MEMORANDUM OPINION

SPENCER WILLIAMS, District Judge.

This case is before the court on cross motions for summary judgment pursuant to Rule 56(c). The issue raised by these motions is whether the operation of a hang kite constitutes piloting an aircraft within the meaning of an exclusion clause in a group accidental death and dismemberment policy. After giving careful consideration to the legal arguments presented by both parties, it is the conclusion of this court that as a matter of law the exclusion clause at issue excepts from the policy's coverage the operation of a hang kite.

The following is a recitation of the undisputed, material facts of this case. On September 14, 1975, Edward Wilson was killed in a hang gliding accident near Milpitas, California, when his hang kite failed to break his fall from a high cliff. The hang kite that the decedent was operating at the time of his death was patterned after a parachute. By contrast, the hang glider in use today is designed like a wing. Yet despite this technological advance in the structure of the hang kite or glider, the control mechanism of the vehicle has remained the same. The operator controls the direction of his flight by utilizing a control bar. By shifting his weight on this bar, the operator can turn the vehicle to the left or right, or he can ascend or descend. In fact, a proficient operator can land on a predetermined spot no larger than an office desk.

In bringing this action, decedent's widow, Patricia Wilson, seeks to recover benefits under a group accidental death and dismemberment policy that Insurance Company of North America issued to her as an employee of Fairchild Camera in Palo Alto, California. Under the terms of the policy the plaintiff is the named beneficiary in the

event that her husband should die as the result of an accidental death. It is undisputed that plaintiff paid all of the premium payments that were due until the time of her husband's death. It is also uncontroverted that when she purchased the policy, the plaintiff relied solely on the terms set forth in the informational brochure that was distributed to the employees of Fairchild Camera by Insurance Company of North America. Plaintiff swears in her affidavit that she never received a certificate of insurance or a copy of the policy itself.

In denying payment of the insurance premium Insurance Company of North America has taken the position that the activity in which the decedent was engaged at the time of his death comes within the aerial navigation exclusion of its policy, and therefore the plaintiff is not entitled to recover any benefits under that policy.

■ Under California law, it is well established that an exclusion clause in an insurance policy cannot be upheld "unless the clause is phrased in clear and unmistakable language." *California State Automobile Association v. Warcick,* 17 Cal.3d 190, 194, 130 Cal.Rptr. 520, 522, 550 P.2d 1056, 1058 (1976). Ambiguous clauses are to be interpreted against the insurer. *Steven v. Fidelity and Casualty Co.,* 58 Cal.2d 862, 868, 27 Cal.Rptr. 172, 176, 377 P.2d 284, 288 (1962). Whether a policy affords clear notice of noncoverage is to be determined by the insured's reasonable expectation of coverage, and the burden is on the insurer to show that the terms of the policy conform to that expectation. *See, e. g., State Farm Mutual Automobile Insurance Co. v. Jacober,* 10 Cal.3d 193, 110 Cal.Rptr. 1, 514 P.2d 953 (1973); *Steven v. Fidelity and Casualty Co.,* 58 Cal.2d at 875, 27 Cal.Rptr. at 186, 377 P.2d at 298. Furthermore, the insurer will be estopped from relying on the coverage of a group policy when the employee never received a copy of it and the coverage is more limited than that afforded by the certificate of insurance, *Humphrey v. Equitable Life Assurance Co.,* 67 Cal.2d 527, 533–34, 63 Cal.Rptr. 50, 54–55, 432 P.2d 746, 750–51 (1967), or by the informational brochure. *See generally Bass v. John Hancock*

*Mutual Life Insurance Co.,* 10 Cal.3d 792, 796 n. 2, 112 Cal.Rptr. 195, 197 n. 2, 518 P.2d 1147, 1149 n. 2 (1974).

■ In the instant case, the juxtaposition of the descriptions of the exclusion clause at issue in the policy and in the brochure reveals no contradiction in the terminology used. Exclusion "E" of the policy reads in pertinent part:

"E. Travel or flight in any vehicle or device for aerial navigation, including boarding or alighting therefrom,

.    .    .    .    .

(2) while the insured is operating, learning to operate or serving as a member of a crew thereof;"

On the first page of the brochure it states that the policy "includes air coverage (as a passenger only) in any aircraft except those used for experimental purposes . . .." On page three it states in pertinent part that "(b)enefits are not payable for losses while piloting an aircraft . . .." It is clear from a fair and reasonable reading of these statements that they exclude from the policy's coverage the same risk, namely, loss due to the operation of a vehicle designed for air travel. That the terminology of the policy exclusion may be broader than that of the brochure exclusion does not necessarily mean that the coverage afforded by the policy is more limited than that afforded by the brochure. In fact, with the possible exception of the inclusion of boarding and alighting from a vehicle, the policy exclusion contains no limitations that are not mentioned in the brochure exclusion. Since there is no basis for applying the doctrine of estoppel to the facts of this case, defendant Insurance Company of North America may rely on the exclusion clause set forth in the policy.

■ But even assuming defendant could not so rely on the policy exclusion merely because the plaintiff never received a certificate of insurance or a copy of the policy itself, that would not change the result of this court's inquiry because the difference between the exclusionary language used in the policy and that used in the brochure is merely one of semantics. The word "pilot" is defined in Webster's New World Diction-

ary (2d ed. 1972) as "a person qualified to operate the controls of an aircraft." The provision of the Public Utilities Code in effect at the time of decedent's death defined "aircraft" as "any contrivance used or designed for navigation of, or flight in, the air." Cal.Pub.Util.Code § 21012 (West 1953) (amended 1975). This latter definition is almost identical to that of the Federal Aviation Program Act, 49 U.S.C. § 1301, which defines "aircraft" as follows: "(5) 'Aircraft' means any contrivance now known or hereafter invented, used, or designed for navigation of or flight in the air." That same Act defines "navigation" as "(28) 'Navigation of aircraft' or 'navigate aircraft' includes the piloting of aircraft." Applying these definitions to the exclusionary language in the brochure, it is clear that the decedent's operation of his hang kite constituted "piloting an aircraft" within the meaning of the exclusion clause.

This court finds support for its conclusion that the activity in which the decedent was engaged at the time of his death was excluded by the terms of defendant's policy, in a recent decision from the Central District of California. In *Fielder v. Farmers New World Life Insurance Co.,* 435 F.Supp. 912 (C.D.Cal.1977), the hang glider that the decedent was operating at the time of his death was capable of being navigated to the extent that the operator could turn the glider to the left or right, ascend or descend and designate a landing point. The court held that this activity constituted "travel or flight" in an "aircraft" in which the decedent was acting as a "pilot" within the meaning of an exclusion clause in a life insurance policy. 435 F.Supp. at 914.

Plaintiff argues, however, that the hang kite that decedent was operating at the time of his death cannot be deemed an aircraft because it was patterned after a parachute. It is true that it has been held that a parachute is not an aircraft within the meaning of a travel exclusion clause in a life insurance policy. *Clark v. Lone Star Life Insurance Co.,* 347 S.W.2d 290 (Tex. Civ.App.1961). Yet it has also been held that the act of parachuting constitutes participating in air travel within the meaning of an exclusion clause in a health and acci-

dent policy. *Smith v. Mutual Benefit Health & Accident Association,* 175 Kan. 68, 258 P.2d 993 (1953). Moreover, in the instant case, the inquiry concerns not only the status of a hang kite as an "aircraft", but also the act of operating it as "piloting" an aircraft. For this reason, the designer of decedent's hang kite could swear in two separate statements given to plaintiff and defendant, respectively, without contradicting himself that the hang kite he designed for decedent was patterned after a parachute and that the means of control was such that the decedent could and did navigate his craft. Construing the exclusionary language in the brochure in its entirety rather than by its divisible parts, it is clear that the insured would reasonably expect that the operation of a hang kite would constitute just the type of activity that the policy was *not* intended to cover. Defendant Insurance Company of North America has, therefore, met its burden of showing that the terms of its policy conform to the reasonable expectation of the insured, and, accordingly, is entitled to summary judgment as a matter of law.

It is so ordered.