Linda Elizabeth CABELL, Appellant,

v.

WORLD SERVICE LIFE INSURANCE
COMPANY, Appellee.

No. 8739.

Court of Civil Appeals of Texas,
Texarkana.

April 15, 1980.

Rehearing Denied May 13, 1980.

David K. Line, Lockman & Line, Associates, Dallas, for appellant.

H. Norman Kinzy, Dale Markland, Strasburger & Price, Dallas, for appellee.

CORNELIUS, Chief Justice.

Donald Prince was accidentally killed while he was sport parachuting. He was insured by a group life insurance policy issued by appellee, World Service Life Insurance Company. Appellant, Linda Cabell, Prince's fiance and beneficiary, demanded payment of the insurance benefits, whereupon appellee brought this suit for declaratory judgment to determine its liability under the terms of the policy.

The principal questions to be decided on this appeal are whether Mr. Prince was engaged in aviation and whether the parachute he used was a "device for aerial navigation" within the meaning of exclusions contained in the policy.

Evidence presented at the trial revealed that Mr. Prince was an experienced jumper in sport parachuting. The chute he used, unlike the conventional parachute used primarily for emergency exits from aircraft, was a square, wing-type device known as a para-plane. Compared to a round parachute, the para-plane was highly maneuverable and was specifically designed for sport parachuting. One witness referred to it as a "ram-air chute" with the air actually flowing through it. Because it was an airfoil, it moved forward through the air instead of only downward, at a speed of approximately 20 miles per hour, and used the aerodynamic principles of the airfoil to generate lift and retard its downward motion. The jumper could control its direction by means of steering toggles which could also be used to brake the chute and retard its forward speed. A major part of sport parachuting was to control the speed and direction of the chute to enable the jumper to land at a particular site. In many respects the para-plane was similar to a glider, and one witness testified that while riding a para-plane, one is not simply drifting or descending through the air but is actually flying in the direction he chooses. Concerning the accuracy of direction control, wit-

nesses testified that a jumper could accurately steer the para-plane from his exit from an airplane to a designated point on the ground one to one-and-a-half miles away. Another witness testified that the para-plane Prince used was a good chute for control and that Prince hit his designated drop zone almost every time he used the chute. A manual for operating chutes similar to the one used by Prince was introduced into evidence, and it contains detailed instructions on operating, controlling speed, determining direction and landing.

On the date of the accident, Mr. Prince was jumping at Lavon North Airport near McKinney, Texas. After he exited from the airplane and was descending and maneuvering toward his pre-selected drop site, he turned his chute sharply to avoid some nearby power lines. The sharp turn induced a stall, causing the chute to lose lift and fall to the ground.

The pertinent provisions of the insurance policy are:

"Section II

.　　.　　.　　.　　.

Description of Coverage

"Subject to the conditions, limitations and exclusions of the policy, insurance granted hereunder shall apply to injury sustained by an Insured Person anywhere in the world provided that aviation coverage shall be limited to riding as a passenger (and not as a pilot or member of the crew) in any previously tried, tested and approved aircraft.

.　　.　　.　　.　　.

"Section IV

Exclusions

"The policy does not cover an Insured Person for any loss caused by, contributed to or resulting from:

.　　.　　.　　.　　.

"(5) injury sustained while, or in consequence of, riding as a passenger or otherwise, in:
　a) any vehicle or device for aerial navigation other than as provided in Section II, Coverage; . . ."

Thus, as we interpret the policy, an insured killed or injured while riding in a device for aerial navigation would not be covered unless coverage was available under the aviation provision, and aviation coverage is provided only if the insured is riding as a passenger in a previously tried, tested and approved aircraft.

Appellant contends that Mr. Prince was not engaged in aviation and was not riding in a device for aerial navigation when he was killed, and consequently was included within the general coverage of the policy, the aviation coverage being immaterial. Appellee contends that Mr. Prince was engaged in aviation and was riding in a device for aerial navigation, but since he was not in a tested and approved aircraft, there was no coverage.

Trial was to the court without a jury. Based upon the evidence summarized previously, the court found that Mr. Prince was riding in a device for aerial navigation and was engaged in aviation, but was not included within the aviation coverage because he was not riding in a previously tried, tested and approved aircraft.

■ The trial court correctly denied recovery. Mr. Prince voluntarily went aloft in an airplane, which constituted participation in aviation, and according to the weight of authority that participation in aviation continued until he returned to earth. See *Smith v. Mutual Benefit Health and Accident Association*, 175 Kan. 68, 258 P.2d 993 (1953); *Richardson v. Iowa State Traveling Men's Association*, 228 Iowa 319, 291 N.W. 408 (1940); *Elliott v. Massachusetts Mutual Life Insurance Company*, 388 F.2d 362 (5th Cir. 1968); *Pittman v. Lamar Life Insurance Company*, 17 F.2d 370 (5th Cir. 1927); *Lincoln Liberty Life Insurance Company v. Goodman*, 535 S.W.2d 7 (Tex. Civ.App. Amarillo 1976, writ ref'd n.r.e.); Annot., 45 A.L.R.2d 462. Because Mr. Prince voluntarily left the aircraft and chose to return to earth by means of a device other than a tested and approved aircraft, the exclusion in the aviation cover-

age applied and there was no coverage under Section II.[1]

■ We also agree with the trial court's conclusion that the para-plane constituted a device for aerial navigation within the meaning of the policy exclusion. In support of her contention that Mr. Prince's para-plane was not a device for aerial navigation, the appellant urges us to apply one of several suggested "classic definitions" which define navigation as the "directing of an *aircraft* from one point on earth to another by means of navigational aids" or "the science or art of conducting ships or *aircraft* from one place to another." Postulating from the trial court's finding that the para-plane was not an aircraft, and a decision[2] holding that a conventional parachute is not an aircraft, appellant argues that the para-plane could not be a device for aerial navigation within the suggested definitions. The definitions relied upon by appellant are somewhat of a scientific or technical nature, and we prefer to resort to the more ordinary or commonly accepted definitions, as we are required to do when the term in question is not defined in the policy itself, as is the case here. For example, appellant's own cited authority, Webster's Third New International Dictionary (Unabridged), gives these definitions as preferred to those suggested by appellant:

> "Aerial—of, or belonging to the air or atmosphere"

> "To navigate—to direct one's course through any medium; specifically to operate an airplane or airship."

By these definitions, aerial navigation would simply mean to direct one's course through the air. We believe such a definition would be closer to the commonly understood and accepted meaning of the term *aerial navigation* than the narrow ones suggested by appellant. Moreover, that general interpretation has received the sanction of the courts. In *Smith v. Mutual Benefit Health and Accident Association*, supra, the Supreme Court of Kansas defined "participating in aeronautics or air travel" as "to share in sailing or floating in the air." The chute in question here more than meets the test of that definition. It did not merely float or drift uncontrollably through the air, but was maneuverable to the extent that its direction, speed and rate of descent could be controlled with a considerable degree of accuracy. The fact that it had no power, except for the air, or that it could not travel upward or horizontally for great distances, is not significant. It could be maneuvered or directed through the air, and we think that the insurance policy and the insured must have contemplated that any device capable of doing that was a device for aerial navigation.

Appellant argues that if the policy intended to exclude accidents involving parachutes, it could have and should have explicitly said so. Of course, the policy could have specifically named every known or conceivable type of device for aerial navigation had the company chosen to do so, but such specificity is not necessary when the general term, by its common and ordinary meaning, clearly includes the device in question.

■ Appellant also contends that the policy provisions relating to aviation and aerial navigation are ambiguous and must therefore be construed in a manner which would permit recovery of the insurance benefits rather than the denial of them. We cannot agree. Ambiguity in the terms of an insurance contract occurs when there are two or more inconsistent interpretations, both of which are fair and reasonable. *Continental Cas. Company v. Warren*, 152 Tex. 164, 254 S.W.2d 762 (1953); 1 Couch on Insurance 2d § 15:58 (1959). For the reasons stated, we

1. When one's departure from an aircraft is forced by an emergency, the accident is still considered to have happened while he was in the aircraft even though he was not actually in it when killed. See *Richardson v. Iowa State Traveling Men's Association*, supra, and cases there cited.

2. *Clark v. Lone Star Life Insurance Company*, 347 S.W.2d 290 (Tex.Civ.App. Waco 1961, writ ref'd n.r.e.).

do not find that the interpretation urged by appellant is a fair and reasonable interpretation of the exclusionary language. See *Smith v. Mutual Benefit Health and Accident Association*, supra.

The judgment of the trial court is affirmed.