**Gaylene D. EDISON, Individually and as Personal Representative of the Estate of Kirk W. Edison, and Ted W. Edison, Plaintiffs,**

v.

**The RELIABLE LIFE INSURANCE COMPANY, Defendant.**

**No. C79–1106S.**

United States District Court, W. D. Washington.

June 30, 1980.

As Amended Sept. 26, 1980.

---

Richard M. Kovak, Foulds, Felker, Burns & Johnson, P.S., Seattle, Wash., for plaintiffs.

Laurie D. Kohli, George, Hull & Porter, P.S., Seattle, Wash., for defendant.

## MEMORANDUM AND ORDER

CURTIS, District Judge.

Plaintiff sues to recover on a policy of life insurance issued by the defendant insurance company upon the life of Kirk W. Edison who lost his life when his sport parachute failed to open while he was engaging in a sport parachuting event. There is no serious dispute as to facts, and both parties have moved for summary judgment, raising the sole issue of the applicability of certain provisions of the policy.

The two provisions of the insurance policy relevant to this case are as follows:

"Section II COVERAGE

Subject to the conditions, limitations and exclusions of the policy, insurance granted hereunder shall apply to injury sustained by an Insured Person anywhere in the world provided that aviation coverage shall be limited to riding as a passenger (and not as a pilot or member of the crew) in any civil aircraft having a valid 'Airworthiness Certificate' (as defined), or any transport type aircraft operated by the Military Airlift Command of the United States including the similar air transport service of any other country."

"Section IV EXCLUSIONS

(5) injury sustained while, or in consequence of, riding as a passenger or otherwise, in:

(a) any vehicle or device for aerial navigation other than as provided in Section II, Coverage; . . ."

Plaintiff's contention appears to be that a sport parachute is not a "device for aerial navigation" and therefor injuries resulting from riding therein are not excluded from the policy. In support of this position she points out that sport parachutes are not mentioned specifically, and the language of the exclusion is ambiguous and should be interpreted most favorably for the insured.

The rules for the construction of insurance policy provisions are clear and well

established. The Ninth Circuit Court of Appeals in *Rauch v. Underwriters at Lloyd's of London*, 320 F.2d 525 (9th Cir. 1963), states the general rule as follows: "In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. (Citing.) However, as said in 14 R.C.L. § 103, p. 931, the rule 'does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists . . . .' "

320 F.2d at 530 (quoting *Wendorff v. Missouri State Life Ins. Co.*, 318 Mo. 363, 1 S.W.2d 99, 57 A.L.R. 615 (1927)). *See also Morgan v. Prudential Ins. Co.*, 86 Wash.2d 432, 545 P.2d 1193 (1976); *Witherspoon v. St. Paul Fire Ins.*, 86 Wash.2d 641, 548 P.2d 302 (1976). But we need not concern ourselves with the intricacies of interpreting ambiguities since the language in the policy with which we are concerned is clear and unambiguous.

■ We first turn our attention to the risks against which the policy insures. Section II describes the coverage as applying to "injury sustained by an Insured Person anywhere in the world provided that aviation coverage shall be limited to riding as a passenger (and not as a pilot or member of the crew) in any civil aircraft having a valid 'Airworthiness Certificate'. . . . ."

"Aviation coverage" is synonymous with "aviation insurance" which is defined by Webster's Third Edition New International Dictionary Unabridged as "insurance against claims and losses arising from the ownership, maintenance or use of aircraft, hangars or airports, including damage to aircraft, personal injury and property damage." Webster defines "aircraft"[1] as "a weight-carrying structure for navigation of the air that is supported either by its own buoyancy or by the dynamic action of the air against its surfaces." It seems clear therefore that at the time of the accident, the insured was engaged in an activity the attendant insurable risks related to which fell within "aviation coverage" as used in the policy. The insured, then, at the time of his death was engaged in aviation, but he was not riding as a passenger in a civil aircraft having a valid "airworthiness certificate." His death therefore was not the result of any risk against which the policy purported to insure him.

■ What has just been said is enough to prevent the plaintiff from recovery. But the policy goes further. It specifically excludes "injury sustained while, or in consequence of, riding as a passenger or otherwise, in: (a) any vehicle or device for aerial navigation other than as provided in Section II, . . . .."

■ In my view, any parachute is "a device for aerial navigation." Webster defines "navigation" as "the act or practice of navigating." "Navigate" is defined as "to travel by ship." "Aerial navigation"[2] therefore means "to travel by air." A parachute is clearly a device in which to travel by air.

■ There has been some discussion as to the distinction between parachutes as "safety devices" and parachutes for "sporting purposes." In my view the distinction lies not in the design or construction of the parachute, but rather the purposes for which it is used. If a person riding as a passenger in a certified aircraft is forced to

1. Wash.Rev.Code § 14.16.010 provides "In this chapter 'aircraft' means any contrivance now known or hereafter invented, used, or designed for navigation or flight in the air, except a parachute or other contrivance designed for such navigation but used primarily as safety equipment." As discussed *infra*, the insured herein did not use his parachute primarily as safety equipment.

2. Although not controlling herein, 49 U.S.C. § 1301(30) (1958) (as amended 1978) provides " 'Navigation of aircraft' or 'navigate aircraft' includes the piloting of aircraft." Section 1301(5) states " 'Aircraft' means any contrivance . . . for navigation of or flight in the air."

use a parachute to save himself from disaster because of some crisis which affects him as a passenger, he might well be covered by the policy until he safely reaches the ground. But one who is riding as a passenger in a certified aircraft loses his status as such when he voluntarily leaves the plane, choosing an alternate means of returning to earth. In the former illustration, if the parachute fails to open, the insured dies as a consequence of having been riding as a passenger in a certified aircraft.[3] In the latter illustration, if the parachute fails to open, the insured dies as a consequence of riding in a device for aerial navigation which has been specifically excluded from the policy.

There has also been much discussion about the maneuverability of various types of parachutes.[4] Such discussion, in my view, is irrelevant since all parachutes are maneuverable to some degree. In any event, no such distinctions are relevant here since the device, a parachute package, in which the insured had chosen to ride and was riding at the time of his death was neither designed nor intended as a safety device, but was designed and intended to be maneuverable.

In *Cabell v. World Service Life Insurance Co.*, 599 S.W.2d 652 (Tex.Civ.App.1980), the court faced a fact pattern virtually identical to that of the instant case. The applicable language of the policy was identical, and the insured was accidentally killed while he was sport parachuting. The court held that he was engaged in aviation from the time he left the ground until he returned to earth and concluded that because the insured voluntarily left the aircraft and chose to return to earth by means of a device other than an approved aircraft, the insured was not covered under the aviation coverage of his policy. The court further held that the insured's parachute was a "device for aerial navigation" and that coverage was excluded under Section IV's exclusion provision.

This court is aware of the case of *Childress v. Continental Cas. Co.*, 461 F.Supp. 704 (E.D.La.1978), aff'd mem., 587 F.2d 809 (5th Cir. 1979), in which the court held under similar facts that a parachute was not a "device for aerial navigation." This court is unable to accept the reasoning or holding of the *Childress* court and prefers to adopt the reasoning of the *Cabell* court.[5]

I hold therefore that the deceased, at the time of his death, was riding in a "device for aerial navigation" and that his death was due to risks which were specifically excluded from the life insurance policy in question.

It appearing to the court that there are no substantial questions of fact which remain to be litigated, and that the defendant is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment be granted, and that plaintiff's motion for summary judgment be denied.

The attorneys for the defendant are directed to prepare a statement of undisputed facts, supporting the judgment, as well as conclusions of law, and judgment.

---

**3.** When an insured leaves an aircraft in order to save his life and subsequently dies due to, e. g., the failure of his parachute to open (*see Richardson v. Iowa State Travelling Men's Ass'n*, 228 Iowa 319, 291 N.W. 408 (1940)) or due to becoming entangled in the shrouds of his parachute (*see Elliott v. Massachusetts Mutual Life Insurance Company*, 388 F.2d 362 (5th Cir. 1968)), the death is a result of the flight itself.

**4.** In *Wilson v. Insurance Co. of North America*, 453 F.Supp. 732 (N.D.Cal.1978) the court discussed aerial devices which had been patterned after a parachute but which were more akin to present day hang-gliders in their high degree of maneuverability.

**5.** In *Childress* the court chose not to follow as precedent an unreported opinion, *Stajnrajh v. Continental Casualty Co.*, Court of Common Pleas of Westmoreland County, Pennsylvania (1965), which held similarly to *Cabell*. 461 F.Supp. at 706, n. 2.