ARNOLD MACHINERY COMPANY,
Plaintiff and Appellant,

v.

David M. BALLS and Richard S. Johns II, co-partners, dba Utah Excavating, Defendants and Respondents.

No. 16934.

Supreme Court of Utah.

Jan. 20, 1981.

---

John W. Lowe of Lowe & Associates, Salt Lake City, for plaintiff and appellant.

James M. Richards of Richards, Bird & Kump, Salt Lake City, for Balls.

Richard C. Diblee, Salt Lake City, for Johns.

HALL, Justice:

Plaintiff appeals a ruling of the lower court denying it recovery of unpaid rent pursuant to an equipment rental agreement.

Plaintiff is in the business of selling and leasing equipment. Defendants are in the excavating business and had secured employment which required the use of a backhoe. Defendants did not have adequate funds for a down payment on a purchase,[1] and therefore agreed to lease the equipment for $3,900 per month.[2]

The "Equipment Rental Agreement" signed by the parties on December 30, 1977, provided, in part, as follows:

ARNOLD MACHINERY COMPANY, INC., a Utah corporation whose address is 2975 West 21st So., Salt Lake City, County of Salt Lake, State of Utah, hereinafter called the lessor, hereby leases to Utah Excavating whose address is 4591 Holly Lane, City of Salt Lake, County of Salt Lake, State of Utah 84117, hereinafter called the lessee, for a minimum period of six months and thereafter until the equipment is returned or until lessor terminates the lease, the equipment hereinafter described, according to the terms and provisions hereinafter stated: ...

On that same date, the parties also signed a "Rental Equipment Purchase Option," apparently to allow defendants time to acquire sufficient funds to make a down payment. The option to purchase provided, in pertinent part, as follows:

The purchase price will be the total of

1) the purchase price of this piece of equipment at the start of rental period which is $92,220.00,

2) a purchase otpion [sic] charge of 1 + ¼% of this purchase price per month from the start of the rental until the exercise of the purchase option,

3) any work orders or repair costs incurred by Arnold Machinery Company on this unit during the rental period and,

4) any taxes to include property taxes that may have been levied against this unit during the rental period.

100% of all rentals due and paid will apply toward purchase.

This option to purchase expires on June 30, 1977[3] or on termination of the Rental Agreement.

Plaintiff filed a financing statement with the Secretary of State within ten days after defendant took possession of the equipment so as to protect its interest in the event the option were exercised.[4]

Defendants became delinquent in their rental payments, paying only $12,823.29 of the agreed six months' rentals of $23,400. During June and July, 1978, plaintiff contacted defendants on several occasions to

---

1. Plaintiff typically requires a down payment of 20 percent of the purchase price. The equipment sought was a used Drott Excavator valued at $92,220.

2. Plaintiff alleges that an additional consideration in defendants' leasing the equipment was that they were not sure that the job for which they needed the equipment would be of sufficient duration to justify purchase. Because defendants dispute the allegation and it is not important to our discussion, we only acknowledge it here.

3. At trial, the parties stipulated "that there is an obvious error in the date on the agreement ... that the date should be 1978."

4. U.C.A., 1953, 70A–9–301(2). Note that such filing is not a factor in determining whether the lease is intended as a security. U.C.A., 1953, 70A–9–408.

encourage them to bring the payments current. By August, the payments totalled only $17,103.32 and plaintiff requested that the equipment be returned, thereby terminating the lease. The equipment was voluntarily returned by defendant Balls on August 22, 1978.

On September 7, 1978, plaintiff leased the equipment to Salt Lake County for $4,400 per month. This subsequent rental agreement was also accompanied by an option to purchase for $85,000 plus one percent per month option charge. After renting for several months, the county decided to purchase the equipment. However, rather than exercising its option to purchase, the county decided to advertise for bids to supply a comparable backhoe. Plaintiff's bid of $66,400 on the previously-leased equipment was accepted and the county thereafter purchased the equipment from plaintiff.

On October 10, 1978, plaintiff filed a complaint against defendants, whereby it sought to recover unpaid rent in the amount of $13,889.64, plus interest and attorney's fees. Plaintiff also sought to recover $127.35 for repair work performed on the equipment. The trial court allowed recovery for the repair work but denied recovery for unpaid rents. The court ruled that the equipment lease constituted a security interest subject to the default requirements of the Utah Uniform Commercial Code.[5] Inasmuch as plaintiff had failed to give defendants notice of the equipment sale to the county, plaintiff was held not entitled to recover. Plaintiff appeals that judgment.

The basic question is whether the lease executed on December 30, 1977, was a "true lease" or a security agreement. Standing alone, the lease is clearly nothing more than an agreement that defendants rent plaintiff's equipment for a minimum period of six months, thereafter terminable by either party. The agreement is somewhat complicated by the accompanying option to purchase. U.C.A., 1953, 70A–1–201(37) provides, in pertinent part, as follows:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

In *FMA Financial Corp. v. Pro-Printers*,[6] this Court ruled that a lease will be treated as a security interest where only nominal consideration is necessary to exercise an option to purchase. In that case, the Court proceeded to analyze the purchase option under three tests: (1) compare the option price with the original list price or cost of the property; (2) compare the option price with "sensible alternatives"; and (3) compare the option price to the fair market value of the property at the time the option is to be exercised. In applying the three tests, the Court concluded that, on the facts presented, the option could have been exercised for nominal consideration.[7]

Such is not the situation in the instant case. Of crucial importance is the fact that the option agreement expired when the lease was terminated. In any event, the cost of exercising the option could not conceivably have been considered "nominal." It was stipulated that if the option were exercised after six months, defendants would have had to pay $75,736.50, plus $736.96 as the cost of repairs. Defendants allege that it would have cost progressively less to exercise the option at 12 months, 24 months, and 36 months. Because the option agreement was terminable after 6 months, the cost of exercising the option at these later times is not material.

---

5. U.C.A., 1953, 70A–1–101, et seq.

6. Utah, 590 P.2d 803 (1979).

7. In *FMA*, at the end of five years the option apparently could have been exercised for approximately $2,130, which was ten percent of the original cost to FMA, and only six percent of the total lease payments.

The foregoing is consistent with cases of other jurisdictions which hold that a true lease can only be negated where there is an *explicit obligation* on the part of the lessee to pay an amount substantially equal to the purchase price.[8] In the instant case, both parties had the right to cancel the lease at any time after June 30, 1978. The lease provided that the lease would run "for a minimum period of six months and thereafter until the equipment is returned or until lessor terminates the lease." After the initial period, the lease therefore became a month-to-month rental.

The trial court interpreted the lease provision (quoted *supra*) as meaning that the lessor could terminate the lease only "according to the terms and provisions hereinafter stated," i. e., for cause. It is our considered opinion[9] that said phrase refers not to the right of termination by the lessor but to the agreement itself—to wit, "Arnold Machinery ... hereby leases to Utah Excavating ... the equipment hereinafter described, according to the terms and provisions hereinafter stated ..." Any other interpretation of the disputed phrase would render the lease perpetual in duration, which was clearly not intended by the parties.

In light of the foregoing, we conclude that the lease was not intended as a security interest and that plaintiff is entitled to recover the unpaid rentals. The lower court's judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Costs to plaintiff.

STEWART, HOWE, and CROCKETT,[*] JJ., and MAURICE HARDING, Retired District Judge, concur.

MAUGHAN, C. J., does not participate herein; HARDING, District Judge, sat.

---

8. See Bender's Uniform Commercial Code Service, Secured Transactions, Volume 1, § 4A.06[9][d], and cases cited therein.

9. In reviewing the interpretation of a written document, we need not defer to the views of the trial court. *Ephraim Theater Company v. Hawk*, 7 Utah 2d 163, 321 P.2d 221 (1958).

* CROCKETT, Justice, concurred in this case before his retirement.