Elizabeth A. DESCHLER, Plaintiff and Respondent,

v.

FIREMAN'S FUND AMERICAN LIFE INSURANCE COMPANY, a corporation, Defendant and Appellant.

No. 18035.

Supreme Court of Utah.

April 27, 1983.

---

Elliott J. Williams, Bruce H. Jensen, Salt Lake City, for defendant and appellant.

Henry S. Nygaard, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The respondent filed suit below to recover insurance benefits under an accidental

death policy which excludes coverage for death resulting from the use of a "device for aerial navigation." On opposing motions for summary judgment, the lower court granted judgment in favor of the respondent, thereby holding as a matter of law that the insured, who died in an accident involving a water ski kite, was not using a "device for aerial navigation" within the meaning of the policy's exclusionary clause. We reverse.

The facts as produced by the parties in support of their opposing motions for summary judgment show that the insured, Robert W. Deschler, died while operating a water ski kite, constructed of aircraft aluminum and dacron sailcloth, with a 17-foot wingspan. In normal use, the operator of a water ski kite sits in a seat made of seat belt webbing equipped with a safety belt. The seat is attached to a control bar which can be used by the operator by shifting his/her body weight to maneuver the kite to the left or right and to ascend or descend. The kite and operator are lifted into the air by being towed behind a motorboat. They are kept aloft by the airfoil design of the kite which creates lift and retards downward motion as the kite is towed by the boat on a rope 250–300 feet long. While airborne, the kite operator may control the speed of the kite to a limited degree by use of the control bar. The rope tow may be disengaged either by someone in the boat or by the kite operator. On disengagement, the kite descends and is guided by the operator to a selected landing site by use of the control bar and body weight.

The evidence presented showed that water ski kites are unstable, and cannot be safely used if there is any wind because of a danger that the kite and operator may be blown over land and injured in a crash. In this case, the insured's tow rope disengaged

and the winds carried his kite over the shoreline at Starvation Reservoir, where he crashed and suffered injuries which resulted in his death. His widow, the respondent, applied for the death benefits payable under her husband's group insurance policy. The appellant denied the respondent's claim based on an exclusionary clause in the policy which reads as follows:

> The policy does not cover any loss, fatal or nonfatal, caused by or resulting from (1) injuries sustained in consequence of riding as a passenger or otherwise in a vehicle or device for aerial navigation.

The sole issue before this Court, which is one of first impression, is whether a water ski kite is a "vehicle or device for aerial navigation" within the meaning of the policy's exclusionary clause. "Interpretation of a written contract is ordinarily a question of law, and this Court need not defer to the trial court's construction, but will make its own independent interpretation of the contract terms." *Jones v. Hinkle,* Utah, 611 P.2d 733, 735 (1980) (citations omitted). *See also O'Hara v. Hall,* Utah, 628 P.2d 1289 (1981); *Arnold Machinery Co. v. Balls,* Utah, 624 P.2d 678 (1981).

All of the cases from other jurisdictions which have been cited by the parties deal with parachutes or hang gliders. The majority of these cases hold that the devices in question constitute devices for aerial navigation.[1] The respondent argues, however, that the devices in these cases are distinguishable from a water ski kite in that parachutes and hang gliders are designed for "free flight" whereas a water ski kite is controlled by the speed and direction of a towboat. This distinction is not significant. Although it is true that the operator of a water ski kite cannot maneuver the device to the same extent as a hang glider, he

1. The cases which do not find the devices to be for aerial navigation are all parachute cases. *See Childress v. Continental Casualty Co.,* 461 F.Supp. 704 (E.D.La.1978), *aff'd per curiam,* 587 F.2d 809 (5th Cir.1979); *Clark v. Lone Star Life Insurance Co.,* 347 S.W.2d 290 (1961). But *see Edison v. Reliable Life Insurance Co.,* 495 F.Supp. 484 (W.D.Wash.1980), *aff'd,* 664 F.2d 1130 (9th Cir.1981); *Wilson v. Insurance Com-*

*pany of North America,* 453 F.Supp. 732 (N.D. Cal.1978); *Fielder v. Farmers New World Life Insurance Co.,* 435 F.Supp. 912 (C.D.Cal.1977); *Fireman's Fund American Life Insurance Co. v. Long,* 148 Ga.App. 216, 251 S.E.2d 133 (1978); *Smith v. Mutual Beneficial Health & Accident Ass'n,* 175 Kan. 68, 258 P.2d 993 (1953); *Cabell v. World Service Life Insurance Co.,* 599 S.W.2d 652 (1980).

nevertheless has *some* control over speed, direction, and more importantly, the determination of when and where to land.

Although not total, this element of control over direction, speed, and point of landing, together with the design of the kite, renders it a device for aerial navigation. A similar result was reached in the case of *Fireman's Fund American Life Insurance Co. v. Long,* 148 Ga.App. 216, 251 S.E.2d 133 (1978), which, on its facts, is more analogous to the present case than any of the other cases relied on by the parties. That case involved an identical exclusionary clause, and a "hang glider" which was designed to be launched by towing behind a motor vehicle. The court adopted the definition of "navigation" contained in the Webster's Third New International Dictionary at 1509 (1966) (hereinafter "Webster's"), namely, "the science or art of conducting ships or aircraft from one place to another," and found the glider in that case to be an "aircraft." Webster's defines "aircraft" as "a weight-carrying machine or structure for flight in or navigation of the air and designed to be supported by the air either by the buoyancy of the structure or by the dynamic action of the air against its surfaces." The undisputed facts in this case show the water ski kite to be a weight-carrying structure which operates on airfoil principles and depends on the "dynamic action of the air against its surfaces" to stay aloft. Thus, based on two critical factors, we hold as a matter of law that the water ski kite in question here is a "device for aerial navigation" within the meaning of the exclusionary clause: 1) the aerodynamic principles which affect its ability to become and remain airborne and 2) the degree of control which the operator has over direction, speed, and the timing and place of landing.[2]

The judgment of the trial court in favor of respondent is reversed. Judgment should be entered for appellant. No costs awarded.

HALL, C.J., and OAKS, J., concur.

2. We note that this particular combination of factors does not encompass forms of "travel through the air" which, although perhaps af- fected by some operator control, are accomplished by mechanical means, such as ski lifts, amusement park rides, etc.

HOWE, Justice (dissenting):

I respectfully dissent.

The majority holds as a matter of law that a water ski kite is a "device for aerial navigation" based on two "critical" factors: (1) the aerodynamic principles which affect its ability to become and remain airborne, and (2) the degree of control which the operator has over its direction, speed, and the timing and place of landing.

I cannot agree that the exclusionary clause should be interpreted so broadly. A snow ski jumper's skis during a jump comply with the "critical" factors outlined by the majority. Yet common sense clearly suggests that they are not devices for aerial navigation even though aerodynamic principles affect their abilities to become and remain airborne and their "operators" exercise a degree of control over direction, speed, and the timing and place of landing.

The majority opinion and other decisions which have interpreted provisions similar to the one in question, have attempted to define "aerial navigation." It has been defined essentially as conducting travel through air. *Edison v. Reliable Life Ins. Co.,* 495 F.Supp. 484 (1980) aff'd, 664 F.2d 1130 (1981); *Wilson v. Insurance Co. of North America,* 453 F.Supp. 732 (1978); *Fireman's Fund American Life Ins. Co. v. Long,* 148 Ga.App. 216, 251 S.E.2d 133 (1978). The element of control involved in conducting travel through air has been emphasized by some jurisdictions, as it is by the majority here. *Cabell v. World Service Life Ins. Co.,* Tex.Cir.App., 599 S.W.2d 652 (1980); *Fielder v. Farmers New World Life Ins. Co.,* 435 F.Supp. 912 (1977). Cf. *Childress v. Continental Casualty Co.,* 461 F.Supp. 704 (1978) where the court focuses on the nature of a parachute in sport parachuting and concludes it is not a "device for aerial navigation." See also *Clark v. Lone Star Life Ins. Co.,* Tex., 347 S.W.2d 290 (1961). I have no quarrel with these defini-

tions. I simply believe that the facts of this case do not require our constructing a general definition.

The question presented by this appeal is restricted to whether a device which is tethered to the earth is a device for aerial navigation. Like many amusement park rides which remain tethered to the ground by cables and other mechanical means, a water ski kite depends for its operation upon its tether to the boat which it trails. Clearly amusement park rides are not devices for aerial navigation. Similarly, water ski kites cannot be so considered. There is no legitimate distinction between them.

I recognize that the court in *Fireman's Fund American Life Ins. Co. v. Long,* supra, held that an insured's death was not covered by the policy because a hang glider which was designed to be launched by towing behind a motor vehicle *was* a vehicle or device for aerial navigation within the policy's aviation exclusion. However, the facts of that case are critically distinctive from the case at bar. There the glider was designed to be launched by towing and the tow rope was to be disengaged by a hand release control at the beginning of the ride. Here the disengaging of the tether is only performed to effect a landing (although that is not how the accident occurred). The glider's ride is untethered in the air while the ride in the kite, like amusement park rides, depends upon the tether for its existence.

Exclusions and words of limitation are to be strictly construed against the insurer. *Aetna Ins. Co. v. Cameron,* Mont., 633 P.2d 1212 (1981); *Brinkman v. Liberty Mut. Fire Ins. Co.,* 45 Cal.Rptr. 8, 63 C.2d 41, 403 P.2d 136 (1965); *Thompson v. Ezzell,* 61 Wash.2d 685, 379 P.2d 983 (1963).

Accordingly, I would affirm the trial court.

STEWART, J., concurs in the dissenting opinion of HOWE, J.