565 So.2d 748 (1990)
Carol TRIANO, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 89-2333.
District Court of Appeal of Florida, Third District.
July 10, 1990.
Rehearing Denied September 4, 1990.
Joe N. Unger, Miami, and H. Lawrence Hardy, Orlando, for appellant.
Barnett, Clark and Barnard and James K. Clark, Miami, for appellee.
Before HUBBART, FERGUSON and LEVY, JJ.
LEVY, Judge.
Carol A. Triano brought suit against State Farm Mutual Automobile Insurance Company [State Farm] to enforce payment under an accidental death and dismemberment policy for the death of her husband. Mr. Triano was killed during a sky diving accident when he collided in the air with another individual as they were deploying their sports parachutes. The accidental death coverage provisions of Mr. Triano's insurance policy contained an exclusion clause which excluded benefits where death resulted as a consequence of "[t]ravel or flight in any vehicle or device for aerial navigation including boarding or alighting therefrom." State Farm moved for summary judgment based upon the exclusion clause arguing that sport parachuting involves travel or flight in a device for aerial navigation. The trial court entered summary judgment in favor of State Farm. We reverse.
The specific circumstances surrounding Mr. Triano's fatal jump were set forth in the deposition testimony of Mr. Libert. Mr. Libert is an experienced sport skydiver, and was acting as the jumpmaster during the skydive which resulted in Mr. Triano's death. According to Libert, Mr. Triano was learning "relative work" which is sky diving in relation to another person, remaining level or diving down to catch them. Mr. Triano was part of a jump group consisting of five persons who were to "linkup" *749 in a circle while free-falling, and then to separate and release their parachutes at a fixed altitude. Mr. Triano was below another individual in the process of deploying his parachute when the other individual collided with Mr. Triano, killing both of them as a result.
Mr. Triano was using a Strato Cloud Delta which is a "ram-air parachute" that is rectangular in shape. This type of parachute remains open by the force of air pushing inside it and looks much like an inflatable mattress. Libert testified that the ram-air parachute is capable of being maneuvered from side to side by its pilot and can be turned in a 360 degree arc. He further testified that the parachute has speed ranges and also a braking system which enables it to descend at a slower rate of speed.
State Farm argues that the insurance policy excludes coverage for death caused by a sports parachute accident, because a sports parachute is a "device for aerial navigation," citing to the cases of Edison v. Reliable Life Insurance Company, 664 F.2d 1130 (9th Cir.1981) and Cabell v. World Service Life Insurance Company, 599 S.W.2d 652 (Tex. Ct. App. 1980). The plaintiff argues that her husband's death did not result from "travel or flight in any ... device for aerial navigation" citing primarily to the case of Childress v. Continental Casualty Company, 461 F. Supp. 704 (E.D.La. 1978), aff'd, 587 F.2d 809 (5th Cir.1979).
While we recognize that there is some merit in both arguments, we expressly do not decide the issue of whether a sports parachute is a "device or vehicle for aerial navigation." Rather, we base our decision to reverse the summary judgment entered in favor of State Farm upon our determination that the contract language is ambiguous as to whether sports parachutes fall within the exclusion.
It is a fundamental principle of contract interpretation that any ambiguities in an insurance policy must be strictly construed against the insurer and in favor of the insured. State Farm Mutual Automobile Insurance Company v. Pridgen, 498 So.2d 1245 (Fla. 1986); Hartnett v. Southern Insurance Company, 181 So.2d 524 (Fla. 1965); State Farm Mutual Automobile Insurance Company v. Mallard, 548 So.2d 733 (Fla. 3d DCA 1989); Zautner v. Liberty Mutual Insurance Company, 382 So.2d 106 (Fla. 3d DCA 1980); Drisdom v. Guarantee Trust Life Insurance Company, 371 So.2d 690 (Fla. 3d DCA 1979); Shelby Mutual Insurance Company v. LaMarche, 371 So.2d 198 (Fla. 2d DCA 1979); Winegarden v. Peninsular Life Insurance Company, 363 So.2d 1172 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 461 (Fla. 1979); Moore v. Connecticut General Life Insurance Company, 277 So.2d 839 (Fla. 3d DCA 1973), cert. denied, 291 So.2d 204 (Fla. 1974). This is particularly true in interpreting exclusionary clauses, which are to be construed even more strictly than coverage clauses. Demshar v. Aaacon Auto Transport, Inc., 337 So.2d 963 (Fla. 1976); Wallach v. Rosenberg, 527 So.2d 1386 (Fla. 3d DCA 1988), review denied, 536 So.2d 246 (Fla. 1988).
Even if it were to be determined that a sports parachute is a device for aerial navigation, sports parachuting would still not fit the exclusionary language in this particular clause, because a sports parachutist does not engage in "travel or flight in" a device for aerial navigation. Rather, a sports parachutist is harnessed by the sports parachute. Furthermore, a sports parachutist cannot reasonably be said to "board" or "alight" from the parachute.
In sum, we agree with the plaintiff that the policy language here is, at the least, ambiguous as to whether a sports parachute falls within the exclusion.
For the reasons discussed herein, we reverse and remand with instructions to enter summary judgment in favor of the plaintiff.
Reversed and remanded with instructions.
FERGUSON, Judge (concurring).
I enthusiastically join in Judge Levy's opinion for the court. The exclusionary language of the contract, when strictly construed *750 as it must be, is not so clear as to encompass parachuting. I would go further, however, to address the insurer's argument that a parachute is a navigational device.
Navigation is defined as "the science or art of conducting ships or aircraft from one place to another; esp: the method of determining position, course, and distance traveled over the surface of the earth by the principles of geometry and astronomy and by reference to devices (as radar beacons or instruments) designed as aids." Webster's Third New International Dictionary, Unabridged, 1509 (1986).
A parachute is not a vehicle designed to traverse the earth's surface. To the contrary, it is designed to slow the rate of gravitation-induced fall through the air, to the vicinity of a particular place on the earth's surface. Whether the exit from the aircraft and landing on the earth is safe and on target depends, in part, on a number of factors beyond the parachutist's control, for example, the skill of the pilot navigating the aircraft from which the parachutist begins the descent, the speed and direction of ground winds, and visibility. The direction of travel is generally vertical with a limited ability of the chutist to slip in a desired direction by the manipulation of the parachute's harness lines.
Only by the most strained interpretation could a parachute be brought within the definition of a device for aerial navigation.