[L. A. No. 28291. In Bank. June 28, 1965.]

MARIA BRINKMANN, Plaintiff and Respondent, v. LIB-
ERTY MUTUAL FIRE INSURANCE COMPANY, De-
fendant and Appellant.

Virgil R. Wells for Defendant and Appellant.

Irmas & Rutter, S. M. Irmas, Jr., and William A. Rutter for Plaintiff and Respondent.

MOSK, J.—Albert Brinkmann was killed while driving a laundry truck owned by his employer. Defendant company had issued an insurance policy to Brinkmann in which it agreed to pay a specified sum in the event he was killed in an automobile accident. The policy contained the following exclusion: "This insurance does not apply: (a) to bodily injury or death sustained in the course of his occupation by any person while engaged (1) in duties incident to the operation . . . of . . . a . . . commercial automobile. . . ." Plaintiff, Brinkmann's widow, brought this action to recover under the policy, and the trial court, sitting without a jury, found in her favor. Defendant appeals from the ensuing judgment, contending that the exclusion was applicable to the circumstances under which the accident occurred.

Brinkmann's duties consisted of picking up soiled laundry, delivering it to his employer's plant, and returning the laundry after it had been processed. The employer company paid for the gasoline and maintenance of the trucks. Brinkmann

was paid on a weekly basis and received no compensation for overtime and, although he began work at a fixed hour, he did not conclude at a specified time. He was instructed to deliver all the clean laundry on his truck before he stopped work for the day. Most of the drivers were required to return the trucks to the employer's parking lot at the end of the day, but a few drivers were permitted to take the trucks home at night with the soiled laundry they had collected on their last run and to wait until the following morning to deliver the laundry to the plant for processing. Some time before the accident, Brinkmann requested and had received permission from his superior to take his truck home at night so that his son could use the family car. After making the last stop on his route, Brinkmann usually proceeded north on Bonnie Brae Street to his home, located at 917 North Bonnie Brae, arriving there between 6 and 7 p.m. The accident occurred at about 6:15 p.m., two blocks from Brinkmann's home, while he was driving north on Bonnie Brae.

The trial court, in concluding that the exclusionary provision of the policy did not apply, found that Brinkmann had finished his duties for the day and was on his way home after the last stop on his route when the accident occurred and that his employer had given him permission to take the truck home at night for his personal benefit and accommodation.

Defendant contends that the evidence established that Brinkmann was still working on his route when the accident occurred and that there was no evidence to support the trial court's conclusion to the contrary. ■ In reviewing the evidence on appeal we are bound by the familiar rule that all conflicts must be resolved in favor of the findings of the trial court and all reasonable inferences indulged in their support and that the findings must be upheld if there is any substantial evidence to sustain them. (E.g., *French* v. *Brinkman* (1963) 60 Cal.2d 547, 550 [35 Cal.Rptr. 289, 387 P.2d 1] ; *Butler* v. *Nepple* (1960) 54 Cal.2d 589, 597 [6 Cal.Rptr. 767, 354 P.2d 239] ; *Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] ; see cases collected in 3 Witkin, Cal. Procedure, Appeal, § 84, p. 2246.) ■ The fact that the accident occurred two blocks from Brinkmann's home, at the approximate hour he usually returned, while he was driving in the direction and on the street he customarily used to get there, amply justified the trial court's conclusion that he was on his way home when he suffered the

injuries leading to his death. Defendant relies on testimony from which it could be inferred that on the day of the accident Brinkmann had failed to make a stop on his route to deliver some clean laundry, which was found in the truck after the accident. Although this testimony could be viewed as some indication that Brinkmann was still working on his route at the time of the accident, the inference is by no means compelled. It is equally consistent with a number of other theories, such as that he had overlooked the bundle of clean laundry or that he had disobeyed his employer's instructions to deliver all the clean laundry before going home. In any event, this was a factual conflict resolved by the trial court.

It is also argued that the exclusionary clause is applicable even if the evidence is sufficient to show that Brinkmann was on his way home when the accident occurred. Defendant contends that Brinkmann had an implied duty to care for the truck until it was in a safe parking place for the night and that he was therefore engaged, as a matter of law, in duties incident to the operation of a commercial automobile at the time of the accident, within the meaning of the exclusionary provision.

As we have seen, the trial court found that Brinkmann had completed his duties for the day when the accident occurred. In determining whether this conclusion may be upheld, it is important to keep in mind that we are dealing here with an exclusionary provision of an insurance policy and that such provisions must be construed strictly against the insurer and liberally in favor of the insured. (*Freedman* v. *Queen Ins. Co.* (1961) 56 Cal.2d 454, 457 [15 Cal.Rptr. 69, 364 P.2d 245]; *Visco Flying Co.* v. *Hansen & Rowland, Inc.* (1960) 184 Cal.App.2d 829, 835 [7 Cal.Rptr. 853].) There was no evidence relating to Brinkmann's responsibility for the care of the truck, but defendant claims that an obligation to see that it was safely parked for the night must be implied because Brinkman would not have been permitted to abandon his truck at the point of his last stop. Defendant also relies upon testimony to the effect that the overnight arrangement resulted in some benefit to the employer, since it reduced congestion in the employer's parking lot.

 Under the circumstances presented here, we cannot say that the trial court erred in finding that Brinkmann's duties had been completed at the time of the accident. Although the fact that he took the truck home at night might

have resulted in the fulfillment of some remotely implied obligation for its safekeeping, the performance of any duty in this regard represented such an insignificant aspect of the journey that we cannot say, in the face of the finding to the contrary, that the trip was made for that purpose. There is nothing in the record to indicate that either Brinkmann or his employer regarded the overnight care of the truck as a part of his duties, and the mere circumstance that the employer may have derived some minor advantage from the arrangement, although a factor to be taken into consideration, does not as a matter of law convert the purpose of Brinkmann's trip to his home from the acceptance of a favor granted by the employer to the performance of an obligation required by it.

The next question presented is whether defendant is correct in contending that the exclusionary provision is applicable as a matter of law because the employer provided the transportation to Brinkmann's home after work. ▇ It is a well-recognized rule that an employee is not within the course of his employment while going to and coming from work. This rule is subject to a number of exceptions, however, among which is that if the employer, as an incident of the employment, furnishes his employee's transportation to and from work and the means of transportation is under the control of the employer, an injury sustained during the course of the transportation is deemed to be in the course of the employment. (*California Cas. Indem. Exchange* v. *Industrial Acc. Com.* (1942) 21 Cal.2d 461, 463 [132 P.2d 815] ; *Breland* v. *Traylor Engineering etc. Co.* (1942) 52 Cal.App.2d 415, 423-425 [126 P.2d 455] ; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Workmen's Compensation, §§ 59, 65, pp. 1703, 1705.)

▇ Even if we were to accept defendant's contention that the circumstances under which Brinkmann was killed would make this exception to the going-and-coming rule applicable as a matter of law, we cannot hold under the language of the exclusionary provision involved here that plaintiff is barred from recovery. The exclusionary clause requires not only that the insured be acting in the course of his occupation, but also that he be engaged in *duties* incident to the operation of a commercial automobile at the time of the accident. Since the trial court was justified in finding that Brinkmann was not engaged in the performance of duties when he was killed, a holding that he was in the course of his employment because

he was accepting transportation benefits provided by his employer as an incident to his employment would not suffice to make the exclusion applicable. Another way of putting the matter is that the only activities in the course of employment which the exclusion was intended to cover were those relating to the performance of duties by the insured and that course-of-employment activities relating to the acceptance of benefits from the employer were not within its terms.

Defendant relies upon a number of cases in which it was held that employees were in the course of their employment while they were using transportation furnished by their employers as an incident of their employment. (*California Cas. Indem. Exchange* v. *Industrial Acc. Com.* (1942) *supra*, 21 Cal.2d 461; *City & County of San Francisco* v. *Industrial Acc. Com.* (1943) 61 Cal.App.2d 248 [142 P.2d 760]; *Trussless Roof Co.* v. *Industrial Acc. Com.* (1931) 119 Cal.App. 91 [6 P.2d 254]; *Dominguez* v. *Pendola* (1920) 46 Cal.App. 220 [188 P. 1025].) These cases merely apply the exception to the going-and-coming rule set forth above and are distinguishable, since they do not involve a policy exclusion limited to the performance of duties by the employee. *Robinson* v. *George* (1940) 16 Cal.2d 238 [105 P.2d 914], another case cited by defendant, is also distinguishable. It relates to the application of the "special errand" exception to the going-and-coming rule, an exception not involved in the present case.

■ Finally, defendant claims that plaintiff has admitted that Brinkmann was in the course of his employment at the time he was killed because she has accepted payments made by the State Compensation Insurance Fund as a result of the accident. According to the testimony, the payments were being made either as an advance or on a voluntary basis and no application for benefits was filed with the Industrial Accident Commission, nor was any determination made by the commission that Brinkmann's death was compensable under the Workmen's Compensation Act. In these circumstances it cannot be said that the mere acceptance of benefits amounts to an admission by plaintiff that Brinkmann was performing duties in the course of his employment when the accident occurred, and, in any event, the effect of any admission in this regard would be a matter for the trial court to weigh. (*Chamberlain* v. *Mutual Ben. Health & Acc. Assn.* (Mo.App. 1953) 260 S.W.2d 790, 794.) If defendant had wished to exclude from coverage all accidents for which a beneficiary had collected workmen's compensation benefits, it

could have done so by inserting a provision to that effect in the policy.

The judgment is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.

Burke, J., dissented.