[L. A. No. 29225.   In Bank.   Jan. 24, 1967.]

EVA BRUCE LEONARD, as Executrix, etc., Plaintiff and Respondent, v. A. BRIGHAM ROSE et al., Defendants and Appellants.

A. Brigham Rose, in pro. per., for Defendants and Respondents.

Wiener & Wiener and Albert C. Mour for Plaintiff and Respondent.

McCOMB, J.—This is an appeal by defendants from a judgment entered in favor of plaintiff.

*Facts*: Ernest Fuqua, then acting as guardian of the estate of his incompetent wife, Mary Ellen Fuqua, filed an action against defendants herein and others (*Fuqua* v. *Warner*), demanding that they return or account for $75,000 worth of securities allegedly belonging to the ward and then in the possession of defendant A. Brigham Rose as a successor trustee.

Defendant A. Brigham Rose, acting on behalf of himself and his wife, defendant Zelletta M. Rose, negotiated with counsel for the plaintiff in that action over a possible settlement. They discussed the payment of certain sums as a down payment and further periodic payments during the ward's life. The amount of $200 a month was arrived at for such periodic payments, and, by use of actuarial tables, the amount of $54,799.20 was determined to be the then commuted value of such periodic payments.

Rose thereupon orally agreed with counsel for the plaintiff that, in consideration of a dismissal with prejudice of the case of *Fuqua* v. *Warner* and a general release of the defendants therein, the Roses would pay Mrs. Fuqua $1,000 forthwith, $3,133.54 on or before February 1, 1954, and $200 a month commencing December 13, 1950, and continuing thereafter as long as Mrs. Fuqua should live; and that, in the event defendants should fall delinquent in any of the monthly payments and such delinquency should continue for 30 days, the sum of $54,799.20, less the total amount of the $200 monthly payments previously made, should, at the option of the plaintiffs or their attorney, immediately become payable.

Defendants executed a written contract of guaranty reciting the effect of the settlement agreement, and on December 8, 1950, the court made an order in the guardianship proceedings approving the settlement. A notice of the entry of such order was promptly served on defendants.

Defendants made the first and second payments of $1,000 and $3,133.54 and also made 90 monthly payments of $200 each, defaulting in June 1958. Notice of intention to accelerate the balance was duly given. No payment was made, however, and the present action was therefore begun.[1]

---

[1]The guardianship of Mrs. Fuqua was terminated October 15, 1954, by a finding that she had been restored to competency. The present action was filed by her and her husband November 20, 1958. During the pendency thereof, Mrs. Fuqua died, and her husband, as executor of her will, was duly substituted as a party plaintiff in her stead. Thereafter, he died, and the executrix of his will, Eva Bruce Leonard, was substituted as a party in his stead.

Plaintiff neglected to file a request for entry of dismissal in *Fuqua* v. *Warner* until June 27, 1963, the day after receiving a demand therefor from defendants.

Defendant A. Brigham Rose testified, denying the alleged contract and contending that the payments which ·he had made (which he did not deny) were made voluntarily.

The trial court made findings of fact, accepting and adopting plaintiff's version, and thereupon entered judgment against defendants for $28,099.20,[2] together with interest in the amount of $10,133.36.

■ *Questions.* First. *Did the settlement agreement violate the statute of frauds?*

*No.* The oral contract before this court was not required by the statute of frauds to be in writing, since there was a possibility that it could be performed within a year. An oral agreement to support a person for the balance of his life, or for some other indefinite period of time, must be regarded as having been made with a view to the possible death within a year of the person for whose benefit the agreement was made. Such an agreement, therefore, does not come within the purview of the statute. (See *Gaskins* v. *Security-First Nat. Bank,* 30 Cal.App.2d 409, 418-419 [9] [86 P.2d 681].)

■ Second. *Was plaintiff in default because the complaint in Fuqua v. Warner was not dismissed immediately after the settlement agreement was made?*

*No.* Defendants apparently contend that plaintiff did not dismiss the complaint in *Fuqua* v. *Warner* at the proper time. The evidence, however, indicates that the first time defendants requested performance was June 26, 1963, and the dismissal was filed promptly thereafter, on June 27, 1963.

■ Where no time is specified for performance, a person who has promised to do an act in the future and who has the ability to perform does not violate his agreement unless and until a demand for performance is made and performance is refused, except in situations (not here present) where the evidence shows that the delay has operated to the detriment of

---

[2]The ninety $200 payments had reduced the balance to $36,799.20. A further sum of $8,700 was credited because of the events set forth in the next paragraph, leaving a principal balance of $28,099.20. The amount of the judgment is not herein questioned.

A default judgment was entered against defendants, and the sum of $8,700 was collected under that judgment. Thereafter, that judgment was set aside. (*Rose* v. *Fuqua,* 200 Cal.App.2d 719 [19 Cal.Rptr. 634]; and see *Fuqua* v. *Rose,* 180 Cal.App.2d 590 [4 Cal.Rptr. 573].) Defendants answered, and the trial which resulted in the judgment now before us took place.

the promisee to such an extent as to render the delayed performance valueless, and the promisor was charged with knowledge of such special circumstances. (*Publicists Local 818* v. *National Screen Service Corp.,* 183 Cal.App.2d 491, 498 [8] [7 Cal.Rptr. 238];[3] *World Sav. & Loan Assn.* v. *Kurtz Co.,* 183 Cal.App.2d 319, 326 [4] [6 Cal.Rptr. 665].)

Since defendants made no demand for the dismissal before June 26, 1963, and show no prejudice from the delay, they have no grounds to complain that *Fuqua* v. *Warner* was not dismissed at an earlier date.

Third. *Did the settlement agreement involve a forfeiture?*

*No.* The agreement was, in no sense, one involving a forfeiture. The parties had agreed on a sum to be paid which, computed to its then present value, would provide Mrs. Fuqua with the agreed upon amount per month. Defendants were given the privilege of making payment in installments, with the possibility that the payee would die before the total sum became due.

The express agreement by which that privilege was to be lost, and the balance of the computed obligation would become payable, was an ordinary acceleration clause, requiring payment of the exact sum by which the payee would be damaged by a default. As such, it was clearly valid. (See *Aristocrat Highway Displays, Inc.* v. *Stricklen,* 68 Cal.App.2d 788, 791-792 [6] [157 P.2d 880].)

Fourth. *Does the evidence support the findings?*

*Yes.* It is fundamental that on appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the findings of the trial court if possible. (*Brinkmann* v. *Liberty Mutual etc. Ins. Co.,* 63 Cal.2d 41, 44 [1] [45 Cal.Rptr. 8, 403 P.2d 136]; *Crawford* v. *Southern Pac. Co.,* 3 Cal.2d 427, 429 [1] [45 P.2d 183].)

In the present case, there was a conflict in the evidence as to whether there was an oral agreement to pay Mrs. Fuqua $200 a month. The trial court, however, found that there was such an agreement. Accordingly, we are bound by that finding on appeal if there is substantial evidence to support it.

---

[3]Disapproved and questioned, as to another issue, in *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 183 [6] [49 Cal.Rptr. 294, 363 P.2d 313], and in *Swift-Chaplin Productions, Inc.* v. *Love,* 219 Cal.App.2d 110, 113 [32 Cal.Rptr. 758, 5 A.L.R.3d 1001].

Such substantial evidence exists, and, in fact, there is little evidence to support defendants' contention that no oral agreement was made, other than Mr. Rose's testimony in that regard. In determining the effect of such testimony, however, the trial court undoubtedly considered the fact that defendants executed the guaranty document and made the $200 payments to Mrs. Fuqua for a period of 90 months, with the obvious inferences that may be drawn therefrom.

██ Fifth. *Was the approval of the settlement agreement in the guardianship proceeding binding on defendants?*

*Yes.* Defendants' argument respecting the probate court's approval of the agreement misses the purpose of that action. The agreement was made by defendants and Mrs. Fuqua's guardian for the purpose of compromising a lawsuit on her behalf. The guardian had no authority to make such an agreement without approval of the court that appointed him. The court's order constituted that approval and vested in the guardian the legal power to make the agreement effective.

The order was binding on everyone interested in the guardianship estate and rendered the agreement enforceable by defendants against the guardian. That is all that defendants needed from any court and all they were entitled to.

The purported appeal from the order denying a motion for new trial is dismissed, and the judgment is affirmed.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.