Filed 12/18/15  Mattoo v. 24/7, Inc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ARVINO MATTOO et al., as Trustees, etc., | H041398 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 1-13-CV240918) |
| v. | |
| 24/7, INC., | |
| Defendant and Appellant. | |

In 2001, 24/7 Customer, Inc. (24/7), a newly founded outsourcing company, engaged Rajat Gupta to act as an advisor.  Gupta was, at the time, a prominent businessman.  In connection with Gupta's agreement to provide advisory services, 24/7 offered him the option to purchase 84,000 shares of 24/7 stock.  At Gupta's request, 24/7 granted the stock option to the Rajat A. Gupta Family Irrevocable Trust (the Trust).  The Trust exercised the option and paid the agreed upon price for the stock.  When the shares vested in 2005, 24/7 failed to deliver the stock certificate to the Trust.  Nor did 24/7 do so when the Trust first requested the stock certificate in August 2008, or when it made a second request in January 2009.  In September 2009, 24/7 informed the Trust that it had no validly exercised stock option.  Arvind Mattoo and Kanchan Gupta (the trustees), as trustees of the Trust, sued 24/7 for breach of contract, among other claims, on February 8, 2013.  24/7 asserted numerous affirmative defenses in its answer.

The trial court granted summary adjudication to the trustees on their breach of contract claim, rejecting 24/7's affirmative defenses. The court then ordered specific performance of 24/7's obligation to issue the stock and stock certificate to the Trust.

On appeal, 24/7 contends it raised triable issues of material fact as to the elements of the breach of contract claim and as to its statute of limitations, fraudulent inducement, and equitable estoppel defenses, such that the court erred in granting summary adjudication to the trustees. 24/7 further argues the court relied on inadmissible evidence in granting summary adjudication in favor of the trustees and erred by ordering specific performance.

We conclude 24/7 has raised triable issues of material fact as to at least one of its affirmative defenses. Consequently, we reverse and remand with directions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Services Agreement and the Option Agreement*

24/7, co-founded in 2000 by P.V. Kannan, provides business process outsourcing services, such as call center operations.

Sometime prior to April 11, 2001, Kannan asked Gupta to act as an advisor to 24/7. Gupta was managing partner of McKinsey & Company and a prominent member in the Southeast Asian business community at the time. In his deposition, Gupta testified that Kannan wanted to "use [him] as an advisor and use [his] name on the advisory board." Gupta further testified that he made an oral agreement with Kannan to be an advisor to 24/7 (the Services Agreement). According to Gupta, he agreed to give Kannan advice when sought and to introduce Kannan to his contacts as "appropriate." Gupta testified that he received a stock option in return for the Services Agreement.

Kannan declared that, under the Services Agreement, Gupta was to be a member of 24/7's advisory board, provide advice, and introduce 24/7 "to senior executives at major corporations that might be good candidates for [business process outsourcing] services"; the Services Agreement did not concern the use of Gupta's name.

2

According to Kannan, he finalized the Services Agreement with Gupta through Anil Kumar, a partner at McKinsey. Kannan declared that he offered to grant Gupta the option to purchase additional shares in exchange for Gupta's further agreement not to become involved in any way with other business process outsourcing companies. Kannan declared that Kumar said he would communicate that proposal to Gupta and that Kumar "later emailed . . . back and said the proposal was acceptable to Mr. Gupta . . . ."

Gupta requested that the stock option be granted to the Trust. On April 11, 2001, 24/7 and the trustees on behalf of the Trust entered into a written agreement (the Option Agreement) for the purchase of 84,000 shares of 24/7 stock at an exercise price of $0.19 per share. The Option Agreement consisted of the "Notice of Grant of Stock Option," "the Stock Option Agreement," and "the 2000 Stock Option Plan."

The Notice of Grant of Stock Option provided the shares would vest over a four year period, with the last of the shares vesting on April 11, 2005.

The Stock Option Agreement authorized 24/7 to repurchase unvested shares under certain circumstances. It also contained an integration clause stating "[t]he Notice [of Grant of Stock Option], this [Stock] Option Agreement and the [Stock Option] Plan constitute the entire understanding and agreement of the [Trust] and [24/7] with respect to the subject matter contained herein or therein and supersedes any prior agreements, understandings, restrictions, representations, or warranties among the [Trust] and [24/7] with respect to such subject matter."

The Stock Option Plan stated that its "purpose" was "to advance the interests of [24/7] and its shareholders by providing an incentive to attract, retain and reward persons performing services for [24/7] and by motivating such persons to contribute to the growth and profitability of [24/7]." It further provided that "Options may be granted only to Employees, Consultants, and Directors," including "prospective Employees, prospective Consultants and prospective Directors to whom Options are granted in connection with written offers of an employment or other service relationship with [24/7]."

3

On April 11, 2001, Kannan sent Gupta a letter enclosing the Option Agreement. It stated, in part: "As a token of appreciation for the guidance and support provided during the early stages of the formation of 24/7Customer.com Inc., I would like to grant you a stock option . . . subject to approval by the Board of Directors." The letter closed with: "We look forward to your continued guidance and support." Kannan declared that he used the "guidance and support" language at Kumar's request. Kumar denied supplying that language at deposition. Kannan further declared that Kumar discouraged him from preparing a separate written agreement concerning "what . . . Gupta had agreed to do in return for the options." Kannan testified at deposition that he knew Gupta could not provide consulting services to 24/7 because of his ongoing obligations to McKinsey.

The Trust provided written notice that it was exercising its option to purchase all 84,000 shares on April 11, 2001, and tendered a check for $15,960 (the cost of the shares at the $0.19 exercise price). 24/7 acknowledged receipt of the executed stock option paperwork and cashed the check.

### B. *Gupta's Performance Under the Services Agreement*

Kannan declared Gupta never introduced 24/7 to any potential customers. At his deposition, Gupta recalled speaking to at least one company about using 24/7 as a vendor and introducing Kumar to companies so that Kumar could, in turn, introduce them to 24/7. Gupta further testified that Kannan asked to be introduced to the CEOs of large companies, such as AT&T. Gupta told Kannan that such introductions would be inappropriate because CEOs of large institutions generally do not make decisions about business process outsourcing vendors.

### C. *Gupta's Involvement With Other Start Ups*

At his deposition, Gupta testified that many young entrepreneurs came to him for advice and that he was "keen to help" them. "Sometimes [he] invested in [those entrepreneurs'] companies as an angel investor. Sometimes, . . . for the investment, they gave both stock and options." On some occasions, he entered into agreements to give

4

"advice and guidance" to those companies. An accountant for Gupta and the Trust testified that Gupta had disputes with two other companies regarding stock options.

Gupta further testified that he obtained stock options from another business process outsourcing company in return for providing guidance and advice and became a "special adviser" to yet another business process outsourcing company. Gupta further testified that he had invested in a third company, which acquired the back office of an insurance company that provided business process outsourcing services. Gupta testified that he "didn't feel [he] had any obligation to inform 24/7" about these investments and there was no "obligation that [he not] advise, quote unquote, hundreds of [business process outsourcing] companies that are in the space."

Kumar opined that Gupta would never "agree to do anything [in return for options from a start up], because . . . [h]ere is a man at the pinnacle of the corporate world. Where is he ever going to do services for some tiny little company?" Kumar made that statement in the context of discussing another company, not 24/7.

### D. *2005 Repurchase Notice and Abandonment of Plan to Repurchase*

On February 8, 2005, Kannan sent a letter to Gupta stating that 24/7 was terminating Gupta's stock option because of his involvement with its competitors, which breached his agreement with the company. Kannan enclosed a check for $15,960, the price the Trust had paid for the underlying shares. In his declaration, Kannan explained that he sent the February 8, 2005 letter because he had learned through news articles and press releases that Gupta was working with competing business process outsourcing companies. Moreover, Gupta had done nothing to help 24/7 generate business. According to Kannan, when he spoke with Gupta about the letter, Gupta promised to make more efforts at introductions going forward and warned Kannan it would not be good to have him as an adverse party. Therefore, Kannan abandoned the plan to repurchase the Trust's shares.

5

*E*.    *The Trustees' Attempts to Obtain a Stock Certificate in 2008 and 2009*

On August 26, 2008, a financial advisor to Gupta and the Trust, Aaron Deuser, e-mailed 24/7 requesting information regarding "an updated valuation" of the Trust's 84,000 shares and "a stock certificate or partnership agreement representing Mr. Gupta's investment in [24/7]." 24/7 responded that Kannan would contact Gupta directly about the request. Gupta did not hear from Kannan, which "raised a red flag" for Gupta. Deuser again e-mailed 24/7 on January 15, 2009. In that e-mail, Deuser wrote: "I'm trying to obtain a share certificate and current valuation for Mr. Gupta's investment in preparation of his year-end financial statements." 24/7's legal counsel responded to Deuser on January 15, 2009, advising him to have Gupta contact Kannan directly because "there are some issues regarding the shares." Deuser testified that the January 15, 2009 e-mail indicated to him there was "a problem."

Gupta e-mailed Kannan on February 13, 2009. He wrote: "you and I had a discussion about [the options] and I thought everything was okay based on that. In any event, I would appreciate a call from you or alternatively, please instruct your legal department to give the information to . . . [Deuser] copied on this email." Apparently, Kannan did not respond.

On September 29, 2009, Deuser e-mailed Kannan: "I'm still trying to obtain the share certificate for Rajat Gupta reflecting his exercising of the stock options he owned in 24/7. . . . Could you please provide an update regarding the situation and let me know what if anything needs to be done in order to facilitate the process?" Kannan responded the following day that "[t]here are no stock options that has [*sic*] been exercised validly from our standpoint." On November 4, 2009, 24/7 mailed Gupta a check for $15,960 made out to the Trust. 24/7 cancelled the Trust's shares on January 31, 2011.

*F*.    *The Complaint and Answer*

The trustees filed suit against 24/7 on February 8, 2013, asserting claims for breach of contract, trespass to chattels, conversion, breach of the duty of good faith and

6

fair dealing, and quiet title. The trustees alleged 24/7 had breached the Option Agreement by wrongfully withholding shares of stock it sold to the Trust. 24/7 filed an answer in which it asserted a number of affirmative defenses, including statute of limitations, fraudulent inducement, estoppel, and breach of contract, including breach of the duty of good faith and fair dealing.

### G. *The Motions for Summary Judgment or Adjudication*

On March 7, 2014, the trustees moved for summary adjudication of their breach of contract claim and of 24/7's affirmative defenses. That same day, 24/7 moved for summary judgment or in the alternative summary adjudication on the ground that all of the trustees' claims were barred by the applicable statutes of limitations.

24/7 submitted Kannan's declaration in opposition to the trustees' motion. The trustees filed written objections in which they objected to large portions of that declaration on hearsay and other grounds. The trial court declined to rule on the trustees' written objections because they were not numbered as required by rule 3.1354(b) of the California Rules of Court. The trustees reiterated their objections at the hearing. When the court asked whether it had to rule on those objections, counsel for the trustees stated that she was re-raising the objections "to preserve them should there be an appeal, so this is really a technical matter." She suggested that whether to rule on the objections was a matter for the court's discretion. The court did not do so.

On May 22, 2014, the court denied 24/7's motion for summary judgment and granted in part and denied in part its motion for summary adjudication. Specifically, the court granted 24/7's motion for summary adjudication as to the trustees' trespass to chattels and conversions claims. With respect to the breach of the duty of good faith and fair dealing claim, the court treated 24/7's motion as one for judgment on the pleadings and granted that motion without leave to amend. The court denied 24/7's motion for summary adjudication as to the trustees' breach of contract and quiet title claims. With respect to the breach of contract claim, the court concluded the trustees had

7

"demonstrated a triable issue of material fact as to when the Option Agreement was repudiated, i.e., breached, and thus when its claim for breach of that agreement accrued, triggering the four-year limitations period."

The court granted the trustees' motion for summary adjudication of the breach of contract claim and 24/7's affirmative defenses. As to 24/7's affirmative defenses, the court concluded 24/7 failed "to provide evidence which establishes each element of" those defenses.

### H. *The Motion for Specific Performance*, *Judgment*, *and Appeal*

The trustees moved for specific performance of the Option Agreement. The court granted that motion on July 10, 2014, ordering 24/7 to reissue 336,000 shares of common stock to the Trust, record the Trust as the holder of those shares in its corporate records, and issue a certificate of ownership for the shares to the Trust.[1] The court entered a judgment "granting plaintiffs['] . . . motion for specific performance and motion for summary adjudication" the same day. 24/7 timely appealed the orders granting the trustees' motion for summary adjudication and ordering specific performance.

## II. DISCUSSION

### A. *Appealability*

Neither party has challenged the appealability of the judgment. "Nonetheless, since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.) Therefore, we requested supplemental briefs addressing (1) whether and how the trial court disposed of the trustees' fifth cause of action for quiet title and (2) whether and why the judgment appealed from is final. To the extent the quiet title cause of action remains pending, we

---

[1] On January 12, 2013, 24/7 split its common stock in a four-to-one stock split, thereby converting the 84,000 shares of common stock originally optioned to the Trust into 336,000 shares of common stock.

8

directed the parties to discuss whether the appeal nevertheless is proper under *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1 (*Rank*) and *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096 (*Belio*).

In a joint letter brief, the parties confirmed that the trial court never disposed of the trustees' fifth cause of action for quiet title and argued that the underlying judgment nevertheless is appealable under *Rank* and *Belio*. We agree.

Generally, an order granting summary adjudication is an intermediate order that is reviewable only on appeal from the final judgment in the action. (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1001.) "A judgment that disposes of fewer than all the causes of action framed by the complaint is not final in the fundamental sense as to any parties between whom another cause of action remains pending." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307.) Like an order granting summary adjudication, an order for specific performance is not appealable where "all substantive issues between the parties have not been resolved." (*Carver v. Teitsworth* (1991) 1 Cal.App.4th 845, 851, fn. 2.) As an exception to the general rule, courts have held that an order granting summary adjudication that disposes of fewer than all of the causes of action in a lawsuit may result in an appealable judgment where it "effectively disposed of the entire case." (*Belio*, *supra*, 33 Cal.App.4th at p. 1102 [construing appeal from an order granting summary adjudication as to one of three causes of action to be an appeal from a final judgment because the remaining claims were "purely ancillary to the first cause of action" and were mooted by the order, such that the order disposed of the entire case]; *Rank*, *supra*, 51 Cal.3d at p. 9 [final judgment existed where trial court entered summary judgment as to only one of seven causes of action because the "judgment effectively disposed of the case"].)

Here, the challenged orders disposed of the entire case. "Once the trial court had determined that" the Option Agreement was valid and ordered that 24/7 reissue the stock to the Trust, "there would be no purpose in conducting further proceedings to decide

9

whether to compel the same result" by declaring that the Trust was the owner of the disputed shares of stock (as requested in the quiet title action). (*Rank*, *supra*, 51 Cal.3d at p. 9.) Accordingly, we conclude the judgment appealed from is appealable.

### B. *Standards of Review*

"[W]here the plaintiff has . . . moved for summary judgment—or, as in this case, summary adjudication—[it] has the burden of showing there is no defense to a cause of action. (Code Civ. Proc., § 437c, subd. (a).) That burden can be met if the plaintiff 'has proved each element of the cause of action entitling [it] to judgment on that cause of action.' (Code Civ. Proc., § 437c, subd. (p)(1).) If the plaintiff meets this burden, it is up to the defendant 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (p)(1).)" (*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.* (2010) 186 Cal.App.4th 383, 388.)

In reviewing an order granting summary adjudication of issues, we are governed by the rules generally applicable to review of summary judgments. (See *Tauber-Arons Auctioneers Co. v. Superior Court* (1980) 101 Cal.App.3d 268, 273.) Accordingly, we review the entire record de novo to determine whether the moving and opposing papers show a triable issue of material fact. (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.) We may affirm on any legally correct ground, "regardless of the grounds relied upon by the trial court." (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457.)

"A grant or denial of specific performance is reviewed under an abuse of discretion standard." (*Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App.4th 463, 472.) "Discretion is abused only when in its exercise, the trial court 'exceeds the bounds of reason, all of the circumstances before it being considered.' . . . A trial court will abuse its discretion by action that is arbitrary or ' "that transgresses the confines of the applicable principles of law." ' [Citations.] In appeals challenging discretionary trial

10

court rulings, it is the appellant's burden to establish an abuse of discretion." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281.)

### C. *The Trustees Proved Every Element of Their Breach of Contract Claim and 24/7 Failed to Raise a Triable Issue of Fact as to that Claim*

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)

With respect to the first element—the existence of a valid contract—24/7 contends there was a failure of consideration, which entitled it to rescind the Option Agreement. Specifically, 24/7 maintains the Services Agreement constituted consideration for the option grant itself. Because, says 24/7, Gupta breached the Services Agreement, the consideration underlying the Option Agreement failed. The company claims that failure of consideration excused it from performing under the Option Agreement. The trustees respond that the Option Agreement was supported by adequate consideration: the $15,960 the Trust paid for the shares.

To resolve the dispute, we consider the law governing options. An option is a contract to keep an offer open for a prescribed period of time. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 168, p. 204.) Where the option is supported by consideration, it is irrevocable. (*Ibid.*; *City of Orange v. San Diego County Employees Retirement Assn.* (2002) 103 Cal.App.4th 45, 51.) If consideration is not given, the option is revocable at any time. (1 Witkin, *supra*, Contracts, § 168, p. 204.)

" 'If the offer be accepted upon the terms and in the time specified, then a bilateral contract arises which may become the subject of a suit to compel specific performance, if performance by either party thereafter be refused.' " (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 418.) Put differently, " '[a]n option is transformed into a contract of

11

purchase and sale when there is an unconditional, unqualified acceptance by the optionee of the offer in harmony with the terms of the option and within the time span of the option contract.' " (*Id*. at p. 420.) Thus, " '[a]n option based on consideration contemplates two separate [contracts], i.e., the option contract itself, which for something of value gives to the optionee the irrevocable right to buy under specified terms and conditions, and the mutually enforceable agreement to buy and sell into which the option ripens after it is exercised.' " (*Ibid*.)

24/7 argues that the promises Gupta made in the Services Agreement provided consideration for the option, and that consideration failed when Gupta breached the Services Agreement. It is entirely possible that 24/7 granted the option to Gupta in exchange for his promise to advise and support the company. Stock options frequently are given in similar circumstances, such as "to employees as an inducement to continue employment or to put forth greater efforts . . . ." (*Newberger v. Rifkind* (1972) 28 Cal.App.3d 1070, 1075.) But "[t]he adequacy of the consideration for the option is not a material question here." (*W.G. Reese Co. v. House* (1912) 162 Cal. 740, 744.) When the Trust exercised the option, "a contract of purchase, binding [24/7] to sell and the [Trust] to buy, became complete. It is this contract which the [Trust] is seeking to enforce, not the agreement for an option, which was immediately executed. Even if an option be given without any consideration, a binding agreement of purchase and sale results from an acceptance of the option during its life." (*Id*. at pp. 744-745.) Accordingly, whether the consideration for the option failed is irrelevant. Because the Trust properly exercised the option, 24/7 is contractually obligated to sell it 84,000 shares of stock. For the foregoing reasons, we conclude the trustees proved the first element of their breach of contract claim: the existence of a contract (the Option Agreement) binding 24/7 to sell and the Trust to buy 84,000 shares of 24/7 stock.

Turning to the remaining elements of the trustees' claim, it is undisputed that the Trust performed by paying 24/7 $15,960, the cost of the shares at the $0.19 exercise

price. 24/7 asserts Gupta's involvement with its competitors "breached his agreement with 24/7 and breached his duty of good faith and fair dealing." This argument fails for the same reasons 24/7's lack of consideration argument fails—regardless of whether Gupta breached the Services Agreement, there exists a separate binding contract under which 24/7 is obligated to sell and the Trust is obligated to buy 84,000 shares of 24/7 stock. That contract to buy and sell arose when the Trust exercised its stock option. 24/7 breached the contract by refusing to provide the stock certificate and cancelling the Trust's shares. A lack of consideration did not excuse 24/7's performance for the reasons stated above. The Trust was damaged as a result of 24/7's breach in that it did not receive the 84,000 shares for which it paid.

In sum, the trustees met their burden by proving each element of their breach of contract cause of action. Thus, the burden shifted to 24/7 " 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*S.B.C.C.*, *Inc*. *v*. *St*. *Paul Fire & Marine Ins*. *Co*., *supra*, 186 Cal.App.4th at p. 388.) 24/7 failed to show that a triable issue of material fact exists as to the trustees' breach of contract claim for the reasons discussed above. Below, we consider whether it did so with respect to its defenses.

### D. 24/7's Affirmative Defenses

#### 1. Statute of Limitations Defense

##### a. The Parties' Contentions

24/7 maintains it was required to perform under the Option Agreement (by providing the Trust with a share certificate) after the option had been exercised, the shares had been paid for, and the shares had vested. Each of those conditions was satisfied by April 11, 2005. 24/7 further argues that, while its performance was due on April 11, 2005, the Trust chose to defer the required performance until it (through Deuser) demanded the share certificate on August 26, 2008, and again on January 15,

13

2009. According to 24/7, its refusal to provide the Trust with a share certificate at that time constituted an actual breach. Thus, 24/7 contends, the limitations period on the Trust's breach of contract claim began to run no later than January 15, 2009, when 24/7's legal counsel told Deuser, "there are some issues regarding the shares." The trustees filed suit more than four years later, on February 8, 2013, such that their breach of contract claim is time-barred.

The trustees respond that the time for complete performance of the Option Agreement never arrived because the parties had ongoing contractual obligations. For example, the Trust was obligated to not sell its shares without providing notice to 24/7 and the opportunity to exercise a right of first refusal, while 24/7 had the ongoing obligation to recognize the Trust as a shareholder. (The trustees do not explain when, if ever, complete performance was due.) According to the trustees, the question is when 24/7 "evidenced an intent to either abandon, rescind, or repudiate the parties' contract." They say 24/7 did so on September 30, 2009, when Kannan informed the Trust that "[t]here are no stock options that has [*sic*] been exercised validly from our [24/7's] standpoint." In the trustees' view, the January 15, 2009, communication did "not constitute a clear repudiation of the parties' agreement." And "even if 24/7's failure to provide the Trust with its share certificates and valuation information on either April 11, 2005, or in response to the Trust's financial advisor's inquiry in August of 2008, were actionable breaches, the Trust was entitled to continue to rely on the parties' contract absent mutual abandonment until the time for complete performance had arrived." The trustees argue that their breach of contract claim is timely because they filed suit within four years of 24/7's September 30, 2009 anticipatory repudiation of the Option Agreement.

In sum, the parties dispute when 24/7's performance was due and whether its breach was actual or anticipatory.

14

### b. Legal Framework

Section 337, subdivision 1 of the Code of Civil Procedure prescribes a four year limitations period for breach of contract claims.

"When a contractual provision specifies the time for performance, that time will generally be given effect." (1 Witkin, *supra*, § 764, p. 854.) "If the contract does not specify the time of performance, and the act cannot be done 'instantly' (see infra, § 763), a reasonable time is allowed." (*Id.*, § 762, p. 853.) "Where no time is specified for performance, a person who has promised to do an act in the future and who has the ability to perform does not violate his agreement unless and until a demand for performance is made and performance is refused, except in situations (not here present) where the evidence shows that the delay has operated to the detriment of the promisee to such an extent as to render the delayed performance valueless, and the promisor was charged with knowledge of such special circumstances." (*Leonard v. Rose* (1967) 65 Cal.2d 589, 592-593.)

"There can be no *actual* breach of a contract until the time specified therein for performance has arrived." (*Taylor v. Johnston* (1975) 15 Cal.3d 130, 137.) A breach by *anticipatory repudiation* may occur before the time for performance. (*Ibid.*) An anticipatory breach occurs when one of the parties to a bilateral contract expressly repudiates the contract by a clear, positive, unequivocal refusal to perform. (*Ibid.*)

24/7 bore the burden to show that a triable issue of one or more material facts exists as to its statute of limitations defense. (*S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co., supra*, 186 Cal.App.4th at p. 388.) It was not required to establish each element of that defense, as the trial court stated.

### c. Analysis

We begin by considering the time for performance: when was 24/7 obligated to deliver the share certificate to the Trust? As noted above, a contractual provision on point will govern. (1 Witkin, *supra*, § 764, p. 854.) Section 13.2 of the Option

15

Agreement, entitled "Delivery of Shares to Optionee," appears to specify the time for performance. It provides: "As soon as practicable after the expiration of the Unvested Share Repurchase Option, but not more frequently than twice each calendar year, the escrow agent shall deliver to the Optionee the shares and any other property no longer subject to such restriction."[2] We conclude there exists a triable issue of material fact as to whether section 13.2 required 24/7 to deliver a share certificate evidencing the Trust's ownership of 84,000 shares to the Trust "[a]s soon as practicable" after the shares vested in April 2005.

If the Option Agreement does not specify a time for performance of 24/7's obligation to provide the Trust with a stock certificate, then 24/7 was not in breach until the Trust demanded performance and 24/7 refused. (*Leonard v. Rose*, *supra*, 65 Cal.2d at pp. 592-593.) There exists a triable issue of material fact as to when, if ever, the Trust demanded 24/7's performance.

On August 26, 2008, Deuser wrote in an e-mail to 24/7, "In addition to the Fair Market Value [of the 84,000 of 24/7 stock], I am also trying to obtain stock certificate or partnership agreement representing Mr. Gupta's investment in [24/7]. Any information you could provide for either of these items would be greatly appreciated." On January 15, 2009, Deuser sent a second e-mail to 24/7 stating: "I'm trying to obtain a share certificate and current valuation for Mr. Gupta's investment in preparation of his year-end financial statements." 24/7 contends those e-mails constituted demands; the

---

[2] Under the terms of the Option Agreement, the "Unvested Share Repurchase Option" permits 24/7 to repurchase unvested shares from (1) an optionee whose service to the company has been terminated or (2) an optionee who attempts to transfer unvested shares. The Unvested Share Repurchase Option expires within 60 days after (1) the optionee's service is terminated or (2) 24/7 learns of the attempted transfer of unvested shares. The Option Agreement further provides that 24/7 "may require the Optionee to deposit the certificate evidencing the shares which the Optionee purchases upon exercise of the Option with an [escrow] agent designated by [24/7] under the terms and conditions of an escrow agreement approved by [24/7]."

16

trustees disagree. We conclude there exists a triable issue of material fact as to whether either of those e-mails constituted a demand for performance.

We find the trustees' contention that the time for performance had not arrived due to ongoing contractual obligations to be unpersuasive. The Trust could not have performed its ongoing obligations—not selling its shares without providing notice to 24/7 and the opportunity to exercise a right of first refusal—if it never received the stock in the first place. Nor could 24/7 recognize the Trust as a shareholder under those circumstances.

### 2. *Fraud in the Inducement Defense*

24/7 contends summary adjudication was improper because a triable issue of fact exists as to whether Gupta committed fraud in the inducement.

Fraud in the inducement is a subset of the fraud tort occurring when the promisor's consent is induced by fraud. (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294.) "[A] contract induced by fraud renders the entire agreement voidable, permitting the aggrieved party to defend a suit on the contract by objecting to its enforcement because procured or induced by fraud." (*Filet Menu, Inc. v. C.C.L. & G., Inc.* (2000) 79 Cal.App.4th 852, 861.) "To establish a claim of fraudulent inducement, one must show that the defendant did not intend to honor its contractual promises when they were made." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1131.) "As our Supreme Court has explained, although that fraudulent intent is often established by circumstantial evidence, ' "something more than nonperformance is required to prove the defendant's intent not to perform his promise." ' " (*Ibid.*)

24/7 contends Gupta induced it to enter the Option Agreement with promises to make introductions on 24/7's behalf and not to work with 24/7 competitors, but Gupta never intended to keep those promises. The only evidence of Gupta's promises is Kannan's declaration. Specifically, Kannan declared that Gupta agreed to introduce 24/7

17

"to senior executives at major corporations that might be good candidates for [business process outsourcing] services." Kannan further declared that Kumar told him Gupta had agreed not to become involved in any way with other business process outsourcing companies. Below, the trustees objected to the foregoing portions of Kannan's declaration on hearsay grounds. As noted above, the trial court failed to rule on any of the trustees' evidentiary objections, as it was required to do. (*Reid v. Google*, *Inc*. (2010) 50 Cal.4th 512, 532 ["The trial court must rule expressly on" written evidentiary objections made before the summary adjudication hearing and oral objections made at the hearing].) The parties devote little real estate in their appellate briefs to discussing the outstanding evidentiary objections. The trustees simply reiterate their hearsay objections; they do not attempt to anticipate and refute 24/7's responses based on the briefing below. 24/7 address portions of the trustees' hearsay objections in a two sentence footnote in its reply brief.

"Rulings on the evidentiary objections are necessary before the trial court or this court can determine whether [24/7] has presented admissible evidence that demonstrates" a triable issue of material fact exists as to its fraud in the inducement defense. (*Hall v. Time Warner*, *Inc*. (2007) 153 Cal.App.4th 1337, 1347-1348 (*Hall*); *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611, 630 (*Martin*) [same].) Where, as here, the trial court fails to rule on evidentiary objections, we are free to review them as a matter of first impression. (*Reid v. Google*, *Inc*., *supra*, 50 Cal.4th at p. 535.) We decline to do so for two reasons. First, rulings on the evidentiary objections " 'can involve a number of considerations more suited to the trial court than the appellate courts, including an exercise of discretion in establishing the record to be reviewed de novo.' " (*Parkview Villas Assn*., *Inc. v. State Farm Fire & Casualty Co*. (2005) 133 Cal.App.4th 1197, 1217 (*Parkview Villas*); see *Hall*, *supra*, at p. 1348 ["Rulings on evidentiary objections involve an exercise of discretion, and it is the trial court's responsibility to rule on the objections in the first instance."]; *Martin*, *supra*, at p. 630 [same].) It is for this

18

reason that the trial court bears the responsibility to rule on the objections in the first instance and that we review evidentiary rulings made on summary judgment for abuse of discretion. (*Parkview Villas*, *supra*, at pp. 1217-1218.) Second, the evidentiary objections are not thoroughly briefed on appeal. Therefore, we shall direct the trial court on remand to rule on the Trust's evidentiary objections and then decide whether 24/7 has demonstrated a triable issue of material fact exists as to its fraud in the inducement defense. (*Hall*, *supra*, at p. 1348.)

### 3. *Equitable Estoppel Defense*

24/7 maintains the trustees are estopped from arguing that it is too late, under the Option Agreement, for 24/7 to repurchase the Trust's shares because Gupta fraudulently induced 24/7 not to cancel the Trust's shares earlier. 24/7 relies on paragraphs 19 and 21 of Kannan's declaration for its contention that Gupta and Kumar induced Kannan not to cancel the Trust's shares in 2001 or 2005, despite his dissatisfaction with Gupta's performance. Below, the trustees objected to both of those paragraphs of the Kannan declaration on hearsay grounds. For the reasons discussed above in the context of 24/7's fraudulent inducement defense, we shall remand to the trial court to rule on the trustees' evidentiary objections and then decide whether 24/7 has demonstrated a triable issue of material fact exists as to its equitable estoppel defense.

### E. *Specific Performance and 24/7's Evidentiary Objection*

Because the court erred in granting summary adjudication to the trustees on their breach of contract claim, it follows that the court also erred in granting specific performance.

Finally, 24/7 contends the trial court abused its discretion in overruling 24/7's objections to portions of the trustees' counsel's declaration, which purported to interpret the Option Agreement. Specifically, the court overruled relevance objections to the following statements in counsel's declaration: (1) "The Stock Option Agreement contains an integration clause indicating that matters concerning the options are governed

19

by a written agreement comprising the Notice of Grant, the 2000 24/7Customer.com Stock Option Plan and the 24/7Customer.com Stock Option Agreement"; (2) "To repurchase unvested options, 24/7 had to provide the Optionee written notice that it was exercising its unvested share repurchase option"; and (3) "This written notice had to be provided within 60 days of either (1) the termination of the Optionee, (2) the exercise of the Option (if later than termination), or (3) the attempted disposition of unvested shares by the Optionee."

"We review a trial court's evidentiary rulings for abuse of discretion." (*Shaw v. County of Santa Cruz*, *supra*, 170 Cal.App.4th at p. 281.) "A judgment of the trial court may not be reversed on the basis of the erroneous admission of evidence, unless that error was prejudicial. (Code Civ. Proc., § 475.) The record must show that the appellant 'sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.' " (*Grail Semiconductor*, *Inc. v. Mitsubishi Electric & Electronics USA*, *Inc*. (2014) 225 Cal.App.4th 786, 799; see Cal. Const., art. VI, § 13; Evid. Code, §§ 353, 354.) " 'Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred.' " (*Turman v. Turning Point of Central California*, *Inc*. (2010) 191 Cal.App.4th 53, 58.)

24/7 does not even attempt to show the trial court's admission of the objected-to portions of the declaration was prejudicial. It does not offer competing constructions of the contractual provisions at issue, nor does it explain how the trustees' constructions influenced the outcome of the summary adjudication motion. Accordingly, 24/7 has failed to carry its burden to show that the trial court's admission of the trustees' counsel's declaration constituted reversible error.

## III.   DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to vacate its orders granting summary adjudication to the trustees on their

20

breach of contract claim and ordering specific performance. The trial court is further directed to rule on the Trust's evidentiary objections and then decide whether 24/7 has demonstrated a triable issue of material fact exists as to its fraud in the inducement or equitable estoppel defenses. The matter should then proceed to trial on 24/7's statute of limitations defense and any other defense as to which the court concludes there is a triable issue of material fact. 24/7 shall recover its costs on appeal.

_____
                    Premo, J.

I CONCUR:

_____
         Elia, J.

RUSHING, P.J., Concurring and Dissenting.

I concur in the majority opinion insofar as it concludes that plaintiff trustees have established an entitlement to judgment on their contract claim, albeit one remaining subject to affirmative defenses. I also concur that the trustees failed to establish an entitlement to summary adjudication on defendant 24/7's statute of limitations defense. I disagree, however, that we should punt the fraudulent inducement defense and equitable estoppel defenses back to the trial court for rulings on the trustees' evidentiary objections. There is only one correct ruling on those objections, which we are as well positioned as the trial court to determine. A ruling by us would conclude the issue and save the parties and the trial court—and potentially ourselves in a future appeal—the time otherwise required to bring the issue to a final resolution. Since it is ripe for resolution right now, I can conceive of no sound basis not to decide it.

The majority cites a number of cases suggesting that trial court rulings on evidentiary objections provide a necessary predicate to effective appellate review of an order granting summary judgment. This proposition does not withstand even the most cursory scrutiny. It is suggested that resolving such objections " 'can involve a number of considerations more suited to the trial court than the appellate courts,' " but the only such "consideration[]" specified is " 'an exercise of discretion in establishing the record to be reviewed de novo.' " (Maj. opn. at p. 18, quoting *Parkview Villas Ass'n, Inc. v. State Farm Fire and Cas. Co.* (2005) 133 Cal.App.4th 1197, 1217-1218.) But a law and motion judge rarely has any "discretion" in ruling on evidentiary matters, and never has any advantage over an appellate court of the kind that generally justifies vesting trial court evidentiary rulings with a cloak of deference. There is no demeanor evidence before the court to potentially influence the meaning to be given to testimony. There are none of the problems of efficient time management or jury confusion often implicated by evidentiary issues at trial. There are only papers, the admissibility of which will usually, if not always, present pure questions of law. Certainly none of the objections at issue on this appeal hinge, even arguably, on anything entrusted to the discretion of the trial court.

Nor do I see how the trial court's ruling (or failure to rule) can be said to

"establish[] the record to be reviewed" on appeal. (*Parkview Villas Ass'n, Inc. v. State Farm Fire and Cas. Co., supra,* 133 Cal.App.4th at p. 1217.) On a motion for summary judgment, evidentiary issues arise when one party submits evidence in support of or opposition to the motion and the adverse party contends that the evidence is not admissible to prove the point on which it is offered. When that occurs, the trial court will either sustain the objection, overrule it, or—as in this case—fail to rule. Whatever the court does, our task on review is, or should be, the same: to determine whether the objection was well taken. In the vast majority of cases—quite possibly all of them—this will be a pure question of law, in our review of which the trial court's ruling poses no constraint whatsoever.

Here the evidentiary issues are fairly simple, though of a type that seems to give considerable difficulty to many practicing attorneys, and more than a few judges. As evidence that Gupta fraudulently induced 24/7's entry into the Option Agreement, 24/7 relied on the declaration of PV Kannan, CEO and co-founder of 24/7, concerning statements made to him by Gupta and by Amil Kumar. Kumar, whom Kannan knew, was a partner at McKinsey & Co., a global consulting firm of which Gupta was the managing director or chief executive. Kannan hoped to enlist Kumar and, through him, Gupta, to "provide services and assistance" to 24/7 by joining its advisory board and giving counsel as well as providing contacts to potential customers. Kumar put Kannan in touch with Gupta, with whom Kannan spoke on one occasion by telephone. During this conversation, Kannan declared, Gupta evinced a "willing[ness] to introduce me, and 24/7, to senior executives at major corporations that might be good candidates for BPO services." Gupta also told Kannan that "because of his challenging schedule, I should arrange whenever possible any calls or possible meetings through one of his McKinsey assistants. He also told me that I should not hesitate to communicate through Mr. Kumar, since Mr. Kumar was located near to me and 24/7, and Mr. Kumar and he spoke or saw each other on a fairly regular basis." After that, all communications leading to the option agreement took place through "either Mr. Kumar or Mr. Gupta's assistant."

Kannan declared that during the ensuing discussions he told Kumar that 24/7 was

2

willing to grant Kumar and Gupta more options than would otherwise be granted an advisory board member, "in return for their agreement not to become involved in any way with another BPO company while they were acting as advisors to 24/7." In response, "Kumar said the proposal was acceptable to him and that he would talk to Mr. Gupta and get back to me. He later emailed me back and said that the proposal was acceptable to Mr. Gupta as well." Based on this understanding, 24/7 granted the options.

The gist of 24/7's fraudulent inducement defense is that Kumar and Gupta gave these undertakings without the intention to perform them, thereby inducing 24/7 to grant the options the trustees seek by this action to enforce. The evidentiary question is whether Kannan's averments concerning these undertakings are admissible over the trustees' hearsay objection. The answer, as any bar exam grader will tell you, is yes—because they are not hearsay at all.

In analyzing any hearsay objection, the first question must always be whether the extrajudicial statement is being "offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) If it is not, then it does not qualify as hearsay, and no hearsay objection can lie. Innumerable errors have been made in the past, and many more will undoubtedly be made in the future, by failing to rigorously inquire, at the very threshold of the hearsay analysis, whether the statement is offered to prove its truth. Here the statements at issue plainly are not. This is most obvious with the statements by Kumar and Gupta concerning their own respective undertakings. Kannan's averment that they each agreed to assist 24/7 with introductions to potential customers is admissible over a hearsay objection and is enough, coupled with evidence of the other elements of the defense, to establish fraudulent inducement.

A somewhat more difficult question is posed by the question whether Kannan could competently testify, over a hearsay objection, that Kumar told him *Gupta* had agreed not to assist 24/7's competitors. I am unsure that this question is actually presented, since Kannan's declaration fails to directly aver that any such representation was made. Assuming he sought to so testify, however, I have no doubt that the testimony would survive a hearsay objection. The evidence would be offered to show not that

3

Gupta actually told Kumar he agreed to the noncompetition term. The evidence would be offered to show that Kumar made that representation to Kannan in order to induce 24/7 to grant the options. It might be open to the trustees to argue that Gupta could not be *held responsible* for such a representation without evidence that he authorized its making, but that is a question of substantive law, not an evidentiary issue. If the *representation* was relevant to the fraudulent inducement defense—as it manifestly was—then its *truth* was irrelevant.

Indeed 24/7's fraudulent inducement defense *presupposes* that all of the extrajudicial statements on which it relied were *false*, i.e., that neither Gupta nor Kumar intended to provide introductions to customers *or* to refrain from assisting competitors. Kumar's once-removed representation about *Gupta*'s intentions is potentially confusing because it seems at first blush to depend for its relevance on its truth, i.e., that Gupta really had told Kumar he intended to avoid aiding 24/7's competitors. But this appearance is deceiving. In reality it does not matter whether Gupta told Kumar that he would refrain from helping competitors. What matters is that Kumar *told* Kannan Gupta had given such an undertaking, knowing that 24/7 would rely on it. If this verbal act was imputable to Gupta, then it is admissible against him; and if his actions are imputable to the trustees in support of a fraudulent inducement defense, then his agent's acts are presumably imputable to them as well.

The same reasoning requires that the trustee's objections be overruled insofar as they concern the averments of Kannan's declaration on which 24/7 relies to establish a triable issue of fact with respect to its claim that the trustees are equitably estopped from challenging as untimely 24/7's attempt to repurchase the option. According to 24/7, such an estoppel arises from statements by Kumar and Gupta intended to induce inaction from 24/7 until the time for repurchase had passed. In one of the challenged paragraphs, Kannan declared that in 2001, after some 24/7 managers expressed a desire to terminate the options because 24/7 had received nothing of value in exchange for them, Kannan "spoke with Mr. Kumar and explained to him that people at 24/7 were very disappointed and unhappy because Mr. Gupta had not done anything at all. . . . Mr. Kumar . . . told me

4

to be patient, . . . that he would also get Mr. Gupta to be more active." In the other challenged paragraph, he declared that after 24/7 learned of reports that Gupta had invested in and promoted a competitor, he attempted to contact Gupta but was instead limited to communicating with Kumar, who told him "that he had spoken to Mr. Gupta and Mr. Gupta had assured him that Mr. Gupta was not an investor" in the competitor. In response to complaints about difficulties in communicating with Gupta, Kumar "assuaged us by agreeing that there would be a telephone conference at least once a month with Mr. Gupta concerning introductions."

None of these averments are even arguably hearsay. Again they are offered as *false* assertions uttered by Gupta, or by Kumar on Gupta's behalf, to lull 24/7 into refraining from terminating the options. As this court has previously noted, evidence of a statement whose proponent contends that the statement was false when made simply cannot satisfy the definitional requirement for a hearsay objection, i.e., that the statement be "offered to prove the truth of the matter stated." (See *Cheal v. EI Camino Hospital* (2014) 223 Cal.App.4th 736, 747, fn.6 [error to exclude as hearsay plaintiff's account of supervisor's assertedly false accusation: "A statement offered for such a purpose can never offend the rule against hearsay."].) Since this applies to all of the statements on which 24/7 relies to establish its fraudulent inducement defense, those statements were admissible over the trustees' hearsay objection. And since those statements were sufficient to establish a triable issue of fact on that defense, the trial court erred—and will err again on remand if it repeats the ruling—by granting summary adjudication in the trustees' favor. I would so hold here and now, permitting this matter to proceed to trial on that and such other defenses as have survived the trustees' motion.

_____
RUSHING, P.J.

5